## CORBETT–ARTHUR INV. CO. et al. v. BLAIR.
### No. 2928.

Court of Civil Appeals of Texas. El Paso. Jan. 25, 1934.

Rehearing Denied Feb. 15, 1934.

Worsham, Rollins, Burford, Ryburn & Hincks, of Dallas, and Callaway & Wade, Sam J. Callaway, Robert C. Pepper, and James E. Whitmore, all of Fort Worth, for appellants.

C. C. Huff, G. H. Penland, and Pope & Irion, all of Dallas, for appellee.

HIGGINS, Justice.

E. A. Corbett and C. A. Arthur, real estate brokers composing the firm of Corbett-Arthur Investment Company, brought this suit against Wiley Blair to recover a commission for effecting the sale of 113,000 acres of ranch land in New Mexico owned by Blair and sold to W. T. Waggoner, trustee of the W. T. Waggoner estate, on June 25, 1931.

The jury found:

(1) That plaintiffs were not the procuring cause of the sale; (2) that plaintiffs did not, on or about June 18, 1931, abandon their contract of employment to sell defendant's ranch to the W. T. Waggoner estate; (3) that the efforts of Frank Kell, without the utilization of the efforts of plaintiffs, were the procuring cause of the sale of the ranch to the W. T. Waggoner estate on or about June 25, 1931.

Upon these findings judgment was rendered in favor of defendant.

The plaintiffs complain of the refusal of a peremptory charge in their favor and of the overruling of their motion for judgment non obstante veredicto.

This matter presents no error. The evidence certainly raises an issue of fact whether the efforts of Frank Kell or plaintiffs' efforts were the procuring cause of the sale and the finding of the jury upon such issue is controlling and final.

Appellants invoke the rule announced in Goodwin v. Gunter, 109 Tex. 56, 185 S. W. 295, 195 S. W. 848, and other cases to the effect that though a real estate broker fails to procure a purchaser ready, willing, and able to buy at the price fixed by the contract of employment between the seller and the broker and thereby earn the commission under the contract, such broker is nevertheless entitled to his compensation according to the contract, if, while it is in force, he procures a purchaser to whom the owner directly sells on terms satisfactory to himself, though for a less amount than that to which the broker was limited.

Such rule has no present application because the evidence shows that long prior to the employment of plaintiffs the defendant had been in touch with the purchaser, W. T. Waggoner; that Kell originally interested Waggoner in the purchase; that Waggoner had caused the property to be inspected with the view of purchasing and was at all times willing to purchase at $4 per acre and the only reason a sale to him had not been effected prior to the employment of plaintiffs was the refusal of Blair to sell for $4 per acre.

The deposition of Waggoner shows that in the fall of 1930 Blair came to Waggoner's ranch and they talked about the purchase of the property; Waggoner talked to Kell in the fall of 1930 about the ranch and twice subsequent to that time; he told Kell he would not give over $4 an acre; he had decided he would pay $4.

"Cross Inty. No. 16: It is a fact, is it not, Mr. Waggoner, that on or about the first part of June, 1931, you had given up the idea of purchasing any ranch, and were endeavoring to lease ranch property in New Mexico and elsewhere in order to supply grass for your cattle?

"Answer to Cross Inty. No. 16: I knew I would buy the ranch if I could buy it for $4.00 an acre, and when a fellow is trading he has got to talk every way, he has got to get down under the horse's belly and straddle his neck and every other way—and I was talking about leasing grass."

"Cross Inty. No. 26: It is a fact, is it not, Mr. Waggoner, that Mr. Frank Kell of Wichita Falls, Texas, and Mr. Frank Kell, alone, brought you and Mr. Blair together at your office in Fort Worth, Texas, on or about June 25, 1931, and producred Mr. Blair to sell his New Mexico ranch at $4.00 per acre, and you to purchase same at $4.00 per acre.

"Answer to Cross Inty. No. 26: Mr. Kell came to my office on that date and his son was with him. I asked him where was Mr. Blair and he said Mr. Blair was down town. I asked him, 'Why doesn't Blair come up here and do his own trading?' Mr. Kell then told his son to go and get Mr. Blair, and he did so. In the conference which followed between Mr. Kell, Mr. Blair and myself, Mr. Blair agreed to accept $4.00 an acre, on the advice of Mr. Kell, and I bought the land. I always intended to buy it if I could at $4.00 an acre. Mr. Kell is the only man who ever offered me the ranch for $4.00 an acre, and that was in the presence of Mr. Blair. I never did have a chance to close the deal until that morning * * * and then I closed it immediately with Mr. Kell and Mr. Blair all present; it didn't take us five minutes after he said he would take that price until we closed the deal. I knew I was going to buy it for $4.00 an acre if I ever got a chance and I wasn't going to give a dime more."

Plaintiffs were employed May 7, 1931, when defendant authorized them to sell for $495,000 cash, and certain property owned by Guy Waggoner, son of W. T. Waggoner. This offer was submitted by plaintiffs to Waggoner and by him rejected. Defendant than authorized plaintiffs to offer it at $4.75 and later $4.50 per acre, and plaintiffs were unable to induce Waggoner to buy at that price. Kell finally induced Blair to accept $4 per acre, and, at a conference between Waggoner, Kell, and Blair, the sale was made at that price.

The testimony shows plainly that at the time plaintiffs were employed Waggoner had long been an interested and prospective purchaser procured by Kell, willing to pay the price finally paid; that plaintiffs failed to sell to Waggoner at the price fixed by their contract of employment and in our opinion their efforts should properly be regarded as wholly ineffective. In any event it was an issue of fact whether their efforts or those of Kell were the procuring cause. Drossos v. Giles (Tex. Civ. App.) 288 S. W. 275.

Appellants complain of the refusal of various issues, definitions, and charges requested to be submitted. These matters present no error. The controlling issues of fact were all properly submitted with all necessary and proper definitions. It would serve no useful purpose to quote the various issues, definitions, and charges so requested and point out why they were properly refused.

The evidence upon the charge of misconduct by the jury supports the finding of the trial court that there was no misconduct which affected the findings of the jury.

Due consideration has been given to all errors assigned and the conclusion reached that they are without merit.

Affirmed.