## MARTIN WEISS V. R. G. GAINES.

No. 6368. Decided April 17, 1935.
(81 S. W., 2d Series, 39.)

*W. P. Donaldson*, of Dallas, for plaintiff in error.

Plaintiff must recover on contract as alleged and variance is fatal. Morris v. Kasling, 79 Texas, 141, 15 S. W., 226; Shade v. Anderson, 36 S. W. (2d) 1041; McClory v. Schneider, 51 S. W. (2d) 738, 21 R. C. L., 609, 49 C. J., 804.

*Louis Wilson*, of Dallas, for defendant in error.

If the parties treated the sale of the stock of the corporation as a sale of the laundry the question of variance became immaterial and Gaines was entitled to his commission. Hancock v Stacy, 103 Texas, 219, 125 S. W., 884; Graves v. Bains, 78 Texas, 92, 14 S. W., 256; Stringfellow v. Powers, 23 S. W., 313.

MR. JUDGE GERMAN delivered the opinion of the Commission of Appeals, Section A.

This was a suit by defendant in error, R. G. Gaines, against plaintiff in error, Martin Weiss, to recover the sum of $4,000.00 as a commission or compensation for alleged services on the part of Gaines in connection with a sale which was made by Weiss to H. Gendel and M. Weinstein. The trial court awarded him a recovery, and the judgment of the trial court was affirmed by the Court of Civil Appeals. 51 S. W. (2d) 428.

We believe a narrative statement from the pleadings and undisputed proof will furnish a proper background for a correct disposition of the case without the necessity for any extended discussion of law.

In the year 1923 the plaintiff in error, Weiss, was President of a corporation known as the Lakeside Laundry & Cleaning Company, which had a capital stock of $10,000.00, represented by 100 shares. While the records of the corporation showed that 98 shares of this stock were in the name of Weiss, one share in the name of his wife, and one share in the name of J. W. Singleton, yet there was evidence of an arrangement between Weiss and Singleton under which Singleton had been working in the laundry, drawing a small salary and making payments on an interest in the business; and that in fact he was regarded as owner of certain shares of stock which Weiss held in trust

for him. While this agreement is not clearly reflected, yet it is undisputed that after the purchase which was made by Gendel and Weinstein, Gendel paid Singleton $10,000.00 for his interest in the business.

The laundry business was being conducted by the corporation, Singleton acting as General Manager. The business was operated in a building owned by Weiss. Defendant in error, Gaines, alleges, and his testimony shows, that he made a parol agreement with Weiss about February 1923 to sell the "laundry." The agreement which he claims to have made with Weiss seems to have undoubtedly comprehended a sale of only the physical properties and good will belonging to the corporation. In his petition he alleged:

"That said Lakeside Laundry & Cleaning Co., consisted of certain washing machines, compressors, mangles, boilers, engines, delivery trucks and other attachments and equipment located in a building at No. 1448-62 North Zangs Boulevard, in the City of Dallas, and said business was at said time operated by the defendant. That being desirous of selling said laundry and equipment aforesaid, the defendant on or about, to-wit: in the month of February, 1923, employed this plaintiff to find a purchaser thereof, and that he agreed to pay the plaintiff for finding said purchaser and making said sale a stipulated amount as hereinafter alleged."

He then proceeded to allege that afterwards he advised Weiss that he knew of a person who would purchase "said laundry and equipment and stock"; that Weiss proposed that he would sell "the aforesaid stock and laundry equipment" on certain terms; that in pursuance of said agreement he "went to work diligently to secure said purchaser of said stock and equipment" who would be satisfactory to plaintiff in error, and that he did find a purchaser in the person of H. Gendel. He then proceeded to allege that about May 25, 1923, plaintiff in error, as the sole owner and proprietor of the Lakeside Laundry & Cleaning Company made a contract with Gendel, setting out the terms of the contract, which were alleged to be substantially as follows: That Gendel would pay plaintiff in error $600.00 in cash and would execute one note in the sum of $10,000.00 secured by deed of trust upon real estate; that in lieu of other notes which the purchaser would execute for the balance of the purchase price, to-wit, $30,000.00, Weiss as President of the corporation executed to himself two notes for $14,000.00 and $16,000.00, respectively, secured by chattel mortgage upon all of the aforesaid machinery and equipment,

and that Gendel was to assume the payment of such notes; that said two notes were to be paid in monthly installments of $300.00 each. Defendant in error further alleged that the sale was consummated upon the terms above set out. He also alleged that the sale was made to Gendel, but that M. Weinstein had some interest in the real estate, which was to be given as security for the $10,000.00 note, and he induced Weinstein to agree to join in the execution of the deed of trust. There were further allegations that he was to be paid his ten per cent commission when the full purchase price for the laundry and business was finally paid. He alleged the final payment of all amounts in 1929 and his petition was filed November 4, 1929.

Among other things defendant in error testified:

"I say I had a talk with Mr. Weiss with reference to selling this laundry. I did not know when I first started this thing that the laundry was a corporation but I learned afterwards that it was. I knew that Mr. Weiss owned the real estate, I knew he owned the laundry, but I didn't know it was incorporated at the time we started. In the second conversation with Mr. Weiss it was agreed between us that I was to ask $40,000.00 for it. I was to sell the laundry as a going proposition without the real estate; the inside and outside machinery and the business but there was no real estate included in that. I was not to sell the lease; there was no lease on it, as I understood, Mr. Weiss was operating it himself."

Again he testified:

"The trade I made was to sell the machinery and this laundry and the laundry as a going concern; that is all I sold."

He further testified as follows:

"Q. Now you say you sold the machinery and the good will of the concern out there, that is what your contract with Weiss was, wasn't it?

"A. Yes sir."

Defendant in error testified that he made the sale to Gendel alone and he negotiated with Weinstein solely for the purpose of getting him to join in the deed of trust. After the written contract was offered in evidence showing Weinstein to be a party thereto, defendant in error filed a trial amendment in which he attempted to allege that the written contract was the result of mutual mistake and did not truly reflect the contract of the parties. It is obvious, however, that he was in no position to allege mutual mistake, not being a party to the contract, and the evidence failed to show that the contract was a simulated one.

The written contract was prepared by Mr. Donalson, attorney for Weiss, and was witnessed by him and by Gaines. It was dated May 25, 1923, signed by Weiss, H. Gendel and M. Weinstein and is as follows:

"This contract this day made and entered into by and between Martin Weiss, hereinafter called first party, and M. Weinstein and H. Gendel, hereinafter called second parties, witnesseth:

"1. That said first party hereby sells and delivers to second parties sixty shares of the capital stock of the Lakeside Laundry & Cleaning Company, a corporation.

"2. That in payment for said stock said second parties agree and bind themselves as follows:

(a) That they will execute and deliver their one promissory note, payable to said first party, for the principal sum of $10,000.00, bearing 8% interest per annum, and secured by real estate as agreed upon.

(b) That all accounts receivable on the books of said corporation, for work done up to and including Saturday, June 2nd, 1923, and all accounts for all finished and undelivered work, done by said company, on and prior to Saturday, June 2nd, 1923, and remaining in the plant on and after Saturday night, June 2nd., 1923, shall be the property of first party, and second parties agree and bind themselves to collect, in so far as they are able to do, and at their own cost and expense, all moneys for all such accounts, and for all such finished and undelivered work, and account to said first party for the same, and the (y) further agree to make and deliver to said first party a full and complete list of such accounts and work.

(c) The second parties will accept and pay for all supplies for which orders have already been placed, in accordance with and upon the terms provided for in the invoices therefor at the time the deliveries of such supplies are made.

(d) That the capital stock of said company may be increased to the extent of $10,000.00, for the purpose of adding equipment to the plant owned by said company; provided, however, that said first party shall have the option to purchase such additional stock, or so much thereof as he may desire to purchase, at the time of its issuance and at not exceeding its par value.

(e) That in the event said first party shall desire to dispose of any of the stock of said company that may be held by him or controlled by him, (it being understood that he shall hold and control such stock, if any, as may be issued in the

name of J. W. Singleton), then said second parties hereby agree and bind themselves to purchase such stock as first party shall desire to dispose of, for not less than four hundred dollars per share, plus accrued profits.

(f) That each and every provision herein contained constitutes and represents a part of the consideration for the sale and transfer of the stock of said company as made by first party to second parties."

While it is shown that the corporation, acting by Weiss as President, executed to Weiss two notes, one for $16,000.00 payable in one year and one for $14,000.00 payable in monthly installments of $300.00, yet these were the notes of the corporation itself and they were not endorsed or assumed by Gendel or Weinstein. It was undisputed that they were for money which had been advanced to the corporation by Weiss for the purchase of machinery and equipment. They appear to have been paid by the corporation itself.

The stock records of the corporation showed the issuance of sixty shares of stock to Gendel and Weinstein on May 31, 1923, and showed the issuance of forty shares to Gendel on February 9, 1927, "by transfer from J. W. Singleton."

These facts plainly show that the only sale made by plaintiff in error, Weiss, to Gendel and Weinstein was a sale of sixty shares of stock in the corporation known as the Lakeside Laundry & Cleaning Company, and not an attempted sale of the physical properties of the corporation constituting the laundry and laundry business. They show that the consideration for the sale was the sum of $10,000.00; and further disclose a transaction between the corporation and Weiss, acquiesced in by Gendel and Weinstein as stockholders, evidencing an adjustment and satisfaction of an indebtedness due Weiss by the corporation. It is obvious that the two notes for $16,000.00 and $14,000.00 did not represent the purchase money for either the stock or physical properties sold by Weiss to Gendel and Weinstein, but represented a method of repayment of money advanced by Weiss to the corporation.

1 It is plain therefore that the sale for which defendant in error claims a commission was one made by Weiss alone without the assistance of defendant in error. The sale which he claims to have negotiated was clearly one of the physical properties and the laundry business, and not a sale of stock in the corporation. It is obvious that he could not recover on the theory that the sale was in reality a sale of all of the properties of the corporation and the laundry business, and that

the parties adopted the method of selling the stock as the easiest and most convenient way of conveying the property, because it is expressly shown that only sixty shares of the stock were transferred, and the $30,000.00 represented by the two notes was in no sense a part consideration for the transfer of property. Manifestly Gendel and Weinstein understood that the other forty shares of stock were held in trust for Singleton, as Gendel afterwards paid Singleton $10,000.00 and took a transfer from him of forty share of stock. All that Gendel and Weinstein acquired by the purchase of May 23, 1923, was a controlling interest in the stock of the corporation.

2 Plaintiff in error pleaded limitation. The suit was not instituted until more than five years after the sale of May 25, 1923. Defendant in error sought to avoid the statute of limitation by alleging that he was not to be paid his commission until after the full payment of the purchase price had been made. Suit was filed shortly after the $10,000.00 was finally paid. It is evident, however, that the whole agreement and sale which defendant in error says he negotiated was repudiated by plaintiff in error, and plaintiff in error proceeded to make an entirely different trade with Gendel and Weinstein. As defendant in error had nothing to do with the contract that was consummated, which was upon a different consideration from the one in the contract he negotiated, it is obvious that if he was entitled to any compensation for his services his right to same accrued immediately on the conclusion of the trade made by plaintiff in error. There was no agreement to pay a commission on that sale after the purchase money was all paid, and hence there was nothing to suspend the running of limitation. Defendant in error witnessed the contract of May 25, 1923, and testified that he read it at the time; hence he could not contend that he did not know the nature of the sale which was actually made by plaintiff in error.

It follows that defendant in error's cause of action was barred by limitation, and the judgments of the trial court and of the Court of Civil Appeals are hereby set aside, and judgment is rendered in favor of plaintiff in error.

Opinion adopted by the Supreme Court April 17, 1935.