### DUNCAN et al. v. STEVENSON.

### No. 4923.

Court of Civil Appeals of Texas. Amarillo.

Sept. 19, 1938.

Rehearing Denied Oct. 17, 1938.

John F. Sturgeon, of Pampa, for appellants.

Newton P. Willis, of Pampa, and Curtis Douglass, of Panhandle, for appellee.

FOLLEY, Justice.

The appellants, Ivy Duncan and Carl M. Smith, have appealed from a judgment rendered against them in a suit in which they sought to recover as real estate brokers a commission of $952 alleged to be due them from the appellee, N. A. Stevenson, for services rendered by them in connection with the sale to the Skelly Oil Company of an oil and gas lease on 952 acres of land in Hutchinson County, Texas, belonging to the appellee.

In response to special issues the jury found that the appellants were not the procuring cause of the sale of the lease on appellee's land, and that they had abandoned their attempt to sell the oil and gas lease to the Skelly Oil Company prior to the time the sale was actually made. By appropriate assignments the appellants attack the sufficiency of the evidence to support such findings.

The record reveals that the transaction involved in this case began some time in April, 1936, presumably about two weeks prior to April 27, 1936. During such time, Duncan and Smith were associated together in the city of Pampa, Texas, in the purchase and sale of oil and gas leases, royalties and real estate in the Panhandle oil field. The negotiations began with Duncan calling to see Stevenson at the latter's home in Hutchinson County, Texas. From such visit it appears that Stevenson agreed with Duncan that he would lease the 952 acres of land for $12.50 per acre in money and an additional $12.50 per acre to be paid in the sale of oil from such land upon a contract to drill an oil well in connection with the lease. Prior to his association with Duncan, Smith had been an employee of the Skelly Oil Company and was well acquainted with the officials of that company. It was, therefore, understood between Duncan and Stevenson that the appellants would attempt to interest, among others, the Skelly Oil Company in the purchase of the lease.

In pursuance to such understanding, Smith called by telephone Richard T. Lyons, manager of the Skelly Oil Company at Tulsa, Oklahoma. Lyons testified by deposition upon the trial that in this conversation with Smith the land was priced to his company at "$15.00 or $20.00 per acre cash, around $25.00 per acre out of oil, and a well required to be drilled in sixty or ninety days." Several days elapsed after such conversation and no reply was received by appellants from the Skelly company. On April 23, 1936, two telegrams were sent by Smith to the Skelly company. The first telegram merely sought the "status" of the "Stevenson deal." No reply having been received to this first telegram, about an hour later a second was dispatched by Smith informing the

company that Stevenson would give such company until 1:30 P. M. the next day to accept or reject the original proposition. On Friday, April 24, 1936, Lyons telephoned. Smith at Pampa that the Skelly Oil Company was not interested in his deal on the Stevenson land, especially the requirement to drill the well.

On the same day, about four o'clock P. M. and after his conversation with Lyons, Smith contacted the appellee on the streets of Stinnett and told him the substance of his conversation with Lyons. It was then agreed between these parties that a new proposition would be submitted to the Skelly company by Smith for an ordinary ten year commercial lease on the property without a drilling contract. Stevenson's version of this new agreement was that he would accept $12.50 per acre for the lease, but Smith understood that the price would be $12, however, such discrepancy becomes immaterial in view of the record in this case. It was undisputed, however, that if the Skelly company accepted the lease, Smith, in connection with his colleague Duncan, would be paid a commission of $1 per acre.

After such understanding with Stevenson, Smith returned to Pampa and sent a night letter telegram, dated April 24th at 10:11 P. M., to Richard T. Lyons of the Skelly Oil Company at Tulsa. Such telegram was as follows: "Another conference Stevenson stop wire me if can use the open acreage sections four and eight approximately nine hundred acres under one lease ten year term dollar rentals commercial lease at price fifteen dollars per acre. Carl M Smith." On Monday, April 27, 1936, Lyons sent Smith the following telegram in reply: "Not interested Stevenson land at fifteen dollars thanks. Richard T Lyons." In the interim between the telegrams just quoted, no communications were had between the appellants and the Skelly Oil Company or between the appellants and the appellee.

The record further reveals that a few days prior to April 27, 1936, the Skelly Oil Company discovered oil in a wildcat well known as No. 1 Herring in Hutchinson County, located in the same vicinity as the Stevenson land. At such time, one B. B. Hays was employed as utility land man for the Skelly Oil Company, working out of the Tulsa office. Formerly, he had been working out of the Pampa office of such company on a temporary assignment following the resignation of the appellant Smith from his employment with the Skelly company. After the discovery of oil in the Herring well, Hays was dispatched by the company to Hutchinson County to check the unleased acreage on trend with the Herring well and instructed to lease such lands as might be available. At no time was Hays instructed by the company to investigate the Stevenson land. His authority was general to purchase leases in the indicated area at around $10 per acre, but usually, before closing a trade, Hays would call Lyons by telephone for certification that his procedure was satisfactory.

On Monday morning, April 27, 1936, the appellee was attending some sort of a farmers' meeting at the court house at Stinnett in Hutchinson County. At such time he had heard nothing from appellants concerning the lease. On this same Monday morning Hays was in the court house at Stinnett examining the county records. Hays and the appellee were introduced to each other by Mr. Malcolm McCormick in the court house. Hays told the appellee that he was the Skelly land man and was looking for the Stevenson lease. That Hays was looking for such land on his own initiative, and without instructions from his company, is established by the testimony of Lyons. Hays produced a map and Stevenson showed him where the Stevenson land was located. Hays then asked Stevenson what he wanted for the acreage and the appellee priced it to him at $12.50 per acre. Hays agreed to call his Tulsa office and submit the offer to his company. Hays and the appellee then drove to Borger where the former called Lyons at Tulsa and told him of his conversation with the appellee and that he thought he could buy the lease at $12.50 or $10 per acre. Lyons agreed with Hays that the latter should make the trade, preferably at $10 per acre. As a result of these various conversations, that same afternoon the appellee and Hays agreed on a price of $10 per acre for appellee's land, drove to Amarillo to the office of the attorneys of the Skelly company and entered into a formal written contract leasing the land at $10 per acre to the Skelly company. It was not until after such deal was made that Lyons informed Hays that the appellant Carl Smith had submitted a proposition on the Stevenson land.

From the above facts and the record before us, it becomes necessary for us to determine only whether or not there was a controverted issue of fact to submit to a jury on the question of the appellants being the procuring cause of the sale of the lease on appellee's land. If by proof which was uncontroverted it is shown that appellants were the procuring cause of the sale, they would be entitled to recover as a matter of law regardless of the adverse finding of the jury. Unless such is the state of the proof, the question, remains one of fact which has been determined by the jury against the appellants and which we would be unauthorized to disturb.

We think it is settled by all the authorities that in order for a broker to recover a commission on the sale of property made by the owner, it is necessary for the broker to show that his services were the procuring cause of the sale. It matters not that the broker was not present and had no personal connection with the actual closing of the sale. If his services brought about the sale, his commission is earned. We think Chief Justice Phillips of the Supreme Court of Texas, in the case of Goodwin v. Gunter, 109 Tex. 56, 185 S.W. 295, on page 296, 195 S.W. 848, expressed very clearly the rule applied to such a situation in the following language: "But the commissions are earned and the broker is entitled to their payment according to the contract if, while it is in force, he procures a purchaser to whom the owner directly makes a sale upon terms which are satisfactory to himself, though different from those limited to the broker and yielding the owner a less amount than that for which the broker was empowered to sell. This is but a rule of fairness and right. In such a case the owner receives the full benefit of the broker's effort. Through the diligence of the broker a buyer is produced. Having interested a prospective buyer the broker is entitled to a fair opportunity of making a sale to him upon the terms authorized. That the owner, pending the broker's negotiation, may, in disregard or repudiation of his obligation to respect the broker's right to conclude the transaction, take the matter into his own hands, avail himself of the broker's effort, close a sale upon satisfactory terms, and yet deny the broker's right of compensation, is a proposition not to be countenanced."

A different rule prevails, however, when the efforts of the broker have utterly failed to procure a sale and the owner, through negotiations independent of the efforts of the broker, effects a sale. Pryor v. Jolly, 91 Tex. 86, 40 S.W. 959; Hancock v. Stacy, 103 Tex. 219, 125 S.W. 884. We think the rule in such a case is succinctly and appropriately stated in Sibbald v. Bethlehem Iron Co., 83 N.Y. 378, 38 Am.Rep. 441, in the following language: "It follows, as a necessary deduction from the established rule, that a broker is never entitled to commissions for unsuccessful efforts. The risk of failure is wholly his. The reward comes only with his success. That is the plain contract and contemplation of the parties. The broker may devote his time and labor, and expend his money with ever so much of devotion to the interests of his employer, and yet if he fails, if without effecting an agreement or accomplishing a bargain, he abandons the effort, or his authority is fairly and in good faith terminated, he gains no right to commissions. He loses the labor and effort which was staked upon success. And in such event it matters not that after his failure, and the termination of his agency, what he has done proves of use and benefit to the principal. In a multitude of cases that must necessarily result. He may have introduced to each other parties who otherwise would have never met; he may have created impressions which, under later and more favorable circumstances, naturally lead to and materially assist in the consummation of a sale; he may have planted the very seeds from which others reap the harvest; but all that gives him no claim. It was part of his risk that failing himself, not successful in fulfilling his obligation, others might be left to some extent to avail themselves of the fruit of his labors."

Viewing the facts of the instant case in the light of the authorities on the subject, we feel unauthorized to conclude as a matter of law that the testimony is uncontroverted on the procuring cause of the sale of the lease in question. It is evident that the appellee and Hays met quite accidentally in the court house at Stinnett; neither had met the other theretofore. Although the Skelly company had received the telegram from the appellants offering the land at $15 per acre, Hays had no actual notice of such offer, and, if it could be said that he was charg-

ed with constructive notice, there is no proof that his company was interested in the lease at such price, or at any price until Hays, its own agent, made his own observations in the field. Hays had been authorized to purchase leases in the immediate vicinity of the Stevenson tract. By his own initiative he was looking for the Stevenson land when he met Stevenson. The appellee testified that he had received no report from the appellants as to any further negotiations with the Skelly company and he had no information that a second offer had been actually made by the appellants to the company. Under such circumstances, can it be said that there is no testimony to support the finding made by the jury that the appellants did not procure the sale of the lease? Is it not possible that the sale as made would have been made had no negotiations ever been instituted by the appellants in behalf of the appellee? Story says: "The true definition of a broker seems to be that he is an agent employed to make bargains and contracts between other persons in matters of trade, commerce and navigation for a compensation commonly called brokerage." Story, Agency, par. 28, page 25. In other words, the broker must bring the minds of the vendor and vendee to an agreement or his efforts must have led to the negotiations that resulted in an agreement. In the instant case, the jury has said, in effect, that the minds of the contracting parties were not brought together by the appellants. It has further said, in effect, that the efforts of the appellants to sell the lease were fruitless and unsuccessful; that the sale would have occurred independently of such efforts; and that the sale was brought about by reason of the independent investigation of B. B. Hays without the aid of the appellants. From all the facts and circumstances in this case, it is our opinion that it was a fact issue as to whether or not the appellants procured the sale of the lease on appellee's land. Such controverted issue having been passed upon by the jury adversely to appellants' claim, we are unauthorized to set aside such finding. Goodwin v. Gunter, supra; English v. William George Realty Co., 55 Tex.Civ.App. 137, 117 S.W. 996, writ refused; Corbett-Arthur Inv. Co. et al. v. Blair, Tex.Civ.App., 68 S.W.2d 271; Parkey v. Lawrence, Tex. Civ.App., 284 S.W. 283, and authorities therein cited.

Since we have reached the conclusion that there was sufficient testimony to support the finding of the jury that the appellants were not the procuring cause of the sale of the lease in question, the issue as to abandonment by appellants of their attempts to sell the lease, and all other questions raised by the appellants on this appeal, have become immaterial.

The judgment is affirmed.