**J. L. HARD, Appellant,**

v.

**D. C. HALL et al., Appellees.**

No. 15942.

Court of Civil Appeals of Texas.

Fort Worth.

Nov. 7, 1958.

Rehearing Denied Nov. 28, 1958.

Barwise, Magoffin & Carrigan, Tilley, Hyder & Law, and Thos. H. Law, Fort Worth, for appellant.

Rawlings, Sayers, Scurlock & Eidson, and Nelson Scurlock, Fort Worth, for appellees.

RENFRO, Justice.

The plaintiff-appellant Hard brought suit against defendants-appellees D. C. Hall and D. C. Hall Transport, Inc., for commission of $75,000 for procuring a buyer for certain motor freight properties owned by appellees.

In answer to special issues the jury found (1) Hall agreed to pay Hard a 5% commission if Hard would procure a buyer, upon terms satisfactory to Hall, for the Hall Motor Freight properties; (2) Hard procured such a buyer; (3) $10,000 was a reasonable attorney's fee for Hard's attorneys.

A motion for judgment non obstante veredicto was filed by Hall.

The court entered a short form judgment which, in addition to formal recitals, merely stated the court "* * * concluded that the law is with the defendants and their motion for judgment notwithstanding the verdict should be sustained." Accordingly, a take nothing judgment was entered against the plaintiff Hard.

The plaintiff is in this court on one point of error, namely, that the trial court erred in entering judgment for defendants non obstante veredicto.

The evidence viewed in the light most favorable to the verdict showed, in brief: Hard was experienced in business dealing with motor carrier operations. In the fall or early winter of 1954, he contacted Hall and inquired if Hall was interested in selling the Motor Freight Line in question. Hall was. Hall wanted $1,500,000 net and agreed to pay Hard a 5% commission if he procured a buyer. Hard went to Tom Christopher, attorney for one Braswell, who was engaged in the trucking business. Christopher immediately called Braswell, whose headquarters were in El Paso. Braswell was interested and requested reports on Hall's operations. After some delay, Hard procured the requested reports and data from Hall and delivered them to Christopher, who in turn sent them to Braswell. Christopher had been Braswell's attorney more than twenty years. Hard made frequent inquiries of Christopher in regard to the proposed sale to Braswell. Sometime during the spring or summer of 1955, Hall requested return of the reports. Christopher obtained them from Braswell and they were returned to Hall. In early September, 1955, Braswell went to Hall's office in Fort Worth, and, without seeing any "reports or statements or anything of that kind," bought from Hall the trucking business for $1,500,000. Christopher did not know of any contact Braswell had with Hall prior to the time he, Christopher, called Braswell at Hard's request. Hall knew, prior to his conference with Braswell, that Hard was working through Christopher, and although he knew Braswell was Christopher's client, did not know Braswell was the prospective purchaser whom Hard was trying to procure as a buyer for Hall's trucking business. After Braswell and Hall started negotiating, Hard had no further dealing with either. A contract was eventually entered into by Braswell and Hall on October 29, 1955. The deal was finally consummated on July 1, 1957, after the sale was approved by the Interstate Commerce Commission.

Hard seasonably made demand on Hall for the claimed commission. Hall denied owing Hard a commission and declined to pay; hence, this lawsuit.

The evidence is sufficient to support the jury's verdict and judgment should have been entered thereon for Hard unless Hall's counter points show that Hard, as a matter of law, was not entitled to recover.

It is immaterial to plaintiff's right to recover that Hall's asking price to Hard was

$1,600,000, while the actual sale to Braswell was $1,500,000.

The commissions are earned and the broker is entitled to payment according to the contract, if, while it is in force, he procures a purchaser to whom the owner directly makes a sale upon terms which are satisfactory to himself, though different from those limited to the broker and yielding the owner a less amount than that for which the broker was empowered to sell. Goodwin v. Gunter, 109 Tex. 56, 185 S.W. 295; Duncan v. Stevenson, Tex.Civ.App., 120 S.W.2d 305; Keener v. Cleveland, Tex. Com.App., 250 S.W. 151; Anderson-Berney Bldg. Co. v. Swan, Tex.Civ.App., 133 S.W. 2d 269.

Neither does the fact Hall did not know that Hard produced Braswell as a purchaser defeat Hard's recovery. Ogden v. Yates' Estate, Tex.Civ.App., 154 S.W. 2d 215.

In his first counter point Hall argues the judgment non obstante veredicto should be affirmed because of the variance between Hard's promise to procure a purchaser for the carrier's assets and his performance in procuring a buyer for the corporate stock owned by Hall. He points out that Hard contended that he was employed to procure a purchaser for all certificates of convenience and necessity owned by D. C. Hall Transport, Inc., and by D. C. Hall and all the physical properties of the above two, as well as the physical properties of Hall Equipment Co., while the sale actually consummated by Hall to Braswell, approved by the ICC, envisioned that the properties transferred by D. C. Hall Transport, Inc., to Braswell would be simultaneously transferred to D. C. Hall Co. and thus be controlled by the purchaser through its purchase of the stock in D. C. Hall Co., and therefore the transaction was primarily a sale of the corporate stock owned by Hall.

Hard testified he was employed to "sell the operation, the Hall trucking opera-tions"; that he undertook to and did secure such a purchaser, he was not a lawyer, was not employed to work out tax problems, union problems, interchange contracts with various firms, etc.; that the contract finally executed by the parties involving those things and the stock transaction was "a means to an end" with which he had nothing to do.

Witness Christopher testified that Hard was trying to sell Braswell all the operating certificates and equipment used in connection with the operation, and that is what Braswell got from Hall; that the stock transaction was merely a method of accomplishing the overall transaction; that purchase of the stock in the Hall Equipment Co. was just a method of accomplishing the transfer of certain assets.

Defendant Hall testified he was interested in conveying the trucking operation to Braswell, the method to be used was a matter for the lawyers to work out. He owned and controlled the D. C. Hall Co., the Transport Co., and the D. C. Hall Equipment Co.; asked, concerning the stock transaction, "And that simply involved a method for accomplishing the sale of your properties to Mr. Braswell, didn't it?", Hall answered, "Yes, sir."

In Cranke v. Trinity Gravel Co., Tex. Civ.App., 272 S.W. 604, 605, the court said: "Nor is it an answer to appellant's demand for compensation to say that the land was conveyed to a corporation organized by Callahan, instead of to Callahan in person. The organization of the corporation evolved from negotiations set on foot by appellant, and *was simply a means to the end desired.* (Emphasis ours.) In affirming that part of the judgment the Commission of Appeals, Trinity Gravel Co. v. Cranke, 282 S.W. 798, 800 said: "In fact and in law Cranke's diligence, efforts, and expenditures set in motion the forces which achieved the organization and the sequent purchase. The line between cause and effect was not broken by the interposition of the corporate promotion and resultant

entity. * * * The corporate promotion in the instant case was no more an independent intervening and causing agency than" wrongful dealing through a subsequent broker. Hall relies on Weiss v. Gaines, 125 Tex. 106, 81 S.W.2d 39, and McClory v. Schneider, Tex.Civ.App., 51 S.W.2d 738, in support of his position. In our opinion, the holding in the Trinity case is applicable to the record in the instant case and we accordingly overrule Hall's first counter point.

■ In his second counter point Hall contends Hard could not recover commissions because he failed to allege and prove he was a licensed broker for the sale of securities, as required by Texas Securities Act of 1955, Sec. 35 [1].

If we are correct in holding that Hard's claim is based on his contract with Hall, which did not contemplate the sale of securities as defined in the Securities Act, and not on the contract between Hall and Braswell, it is immaterial that Hard was not a licensed broker as defined by the Securities Act. Hard's contract with Hall was to secure a buyer of the trucking operations. As heretofore pointed out, the contract between Hall and Braswell was the method used by Hall and Braswell to carry out the sale. The evidence shows, and the jury found, that Hard procured a buyer satisfactory to Hall. The subsequent assignment of stock was merely the means adopted by Hall to transfer the trucking operations.

■ Hall next seeks to sustain the judgment non obstante veredicto on the ground Hard failed to allege and prove he was licensed as a real estate agent or broker as required by Art. 6573a, Sec. 13, Vernon's Ann.R.C.S. of Texas. He points out that in the Hall-Braswell contract Braswell agreed to assume Hall's obligation contained in certain lease contracts.

The contract between Hall and Braswell did not show any consideration for the leases on freight terminals. Braswell merely agreed to assume the leases. Again, we refer to the commission contract between Hard and Hall. It was not a contract for the sale or lease of real estate. Hard's contract with Hall cannot be defeated because of the fact that leases entered into the contract finally consummated between Hall and Braswell. Teairl v. Gober, Tex.Civ.App., 257 S.W.2d 782. Under the record we do not think the above cited statute bars Hard from recovery.

■ In his fourth counter point Hall insists the judgment non obstante veredicto must be affirmed because there is an implied or presumed finding on the part of the trial court that Hard's contract with Hall had terminated prior to the time he procured a purchaser for the property.

Hall testified he had no contract with Hard. Hard testified he did have such contract. Both Hard and Christopher testified Hard continued his efforts to procure Braswell as a buyer. No limit was set as to the time in which Hard was to procure a buyer. Hall filed a general denial only in the trial court. He produced no evidence that the contract with Hard, the existence of which he denied, had expired. Under the provisions of Rule 279, Texas Rules of Civil Procedure, "all independent grounds of recovery or of defense not conclusively established under the evidence and upon which no issue is given or requested shall be deemed as waived. * *" Hard's grounds of recovery were submitted to the jury. If Hall claimed the contract had terminated he should have plead such defense and requested issues thereon. He did neither. Such defense was not conclusively established, and we hold that the court's non obstante veredicto judgment cannot be sustained on a presumed finding that the contract had terminated. A per-

1. Now Vernon's Ann.Civ.St. art. 581–34.

emptory instruction is warranted only when the evidence is such that no other verdict should be rendered. Counter point four is overruled.

■ By cross-assignments of error Hall urges the court committed reversible error in allowing Hard to testify it was cus-,tomary in the motor industry for the vendor to pay a commission, and in refusing to allow Hall to testify he would not have sold to Braswell if he had known Hard was claiming a commission. The rulings of the court did not result in the admission or rejection of evidence which would have persuaded a juror of ordinary intelligence to agree to a verdict contrary to what he would have agreed to had the rulings been as Hall desired. In the light of the entire record, the rulings of the court, even if error, were not such errors as were calculated to cause and probably did cause the rendition of an improper verdict.

■ Finally, Hall contends "the verdict of the jury is contrary to the overwhelming weight and preponderance of the evidence showing rather conclusively that the jury was influenced largely by passion and prejudice or some other improper motive."

Our study of the entire record convinces us the evidence, some of which we have set out, was sufficient to support the jury findings, and we are not in accord with Hall's argument that the verdict was contrary to the overwhelming weight and preponderance of the evidence.

The judgment of the trial court is reversed and judgment here rendered for plaintiff Hard on the jury verdict for $75,-000 commissions and $10,000 attorney's fee, with interest from February 25, 1958.

Reversed and rendered.