## TEAIRL v. GOBER et al.
### No. 10135.

Court of Civil Appeals of Texas. Austin.
April 29, 1953.

Rehearing Denied May 20, 1953.

Cofer & Cofer by G. Hume Cofer, Austin, for appellant.

B. P. Traynor and Julius F. Franki by Julius F. Franki, Austin, for appellees.

HUGHES, Justice.

This is a broker's suit for commissions. Appellant O. F. Teairl is the broker and appellees, E. B. Gober and Monte Burt, partners, are the alleged principals.

Appellant alleged that appellees had employed him to act as their agent in the sale of certain personal property consisting of pool tables, chairs, lighting fixtures and other fixtures used in connection with a club owned and operated by appellees, the asking price to be $8,000 and the taking price to be as low as $6500 appellant to receive 5% of the sale price as payment for his services in negotiating a sale.

This alleged agreement was oral.

Appellant further alleged that he was the procuring cause of the sale of such personal property for the sum of $7800 and was therefore due a commission of $390 with interest.

The case was tried before and submitted to a jury on the three special issues which follow:

"Special Issue No. 1.

"Do you find from a preponderance of the evidence that the Defendant,

E. B. Gober, listed for sale the property referred to in evidence with the Plaintiff, O. F. Teairl?

"Special Issue No. 2.

"Do you find from a preponderance if the evidence that the Defendant, E. B. Gober, promised to pay to Plaintiff, O. F. Teairl, a commission of five (5%) per cent of the sales price of the property referred to in evidence?

"Special Issue No. 3.

"Do you find from a preponderance of the evidence that the Plaintiff was the procuring cause of the sale of Defendant's property referred to in evidence?"

All three issues were answered "Yes."

Notwithstanding this verdict judgment was rendered, on appellees' motion, that appellant take nothing by his suit.

The basis of this motion and the court's action thereon seems to have been that appellant was precluded from recovery by force of Sec. 22, Art. 6573a, V.A.C.S., providing that an agreement to pay a commission for the sale or purchase of any real estate must be in writing.

The "realty" feature of the case is injected by the fact that in the bill of sale transferring the personal property mentioned above from appellees to the purchasers it was provided as a part of the consideration therefor that purchasers would assume any rents due on the club room where the fixtures were located (2nd floor, 101½ East 7th Street, Austin, Texas) and agreed to save appellees harmless for all rents thereon from December 30, 1949 to March 5, 1952, and further that purchasers would deliver to appellees a cancellation of the lease covering such premises which appellees and the Hodges Trust, owner of the property, had made on December 30, 1949, and a release of all indebtedness due or to become due thereunder.

Appellee Gober testified that "he formerly operated a businessmen's club at 101½ East 7th Street in Austin; that he was enjoined by some of his neighboring tenants from continuing the operation of the club in June, 1951; that some time thereafter Mr. Teairl (Appellant) came to him and asked him about selling the place; that he told him that he would sell anything he owned, except his wife, if he got enough money for it; * * *."

He also testified that he would not have sold the fixtures unless he had been able to procure a release from the Hodges lease on the club.

On the other hand appellant testified: "Immediately after the injunction was granted, Mr. Gober gave me a price, the terms and conditions and all. He was asking $8,000.00. He agreed to pay me five (5%) per cent of the sales price as a commission if I was successful in selling the property for him. The lease on the premises was not involved in the agreement at all. He merely agreed with me that I was to sell the personal property that was used in the club. I understood that the lease was abandoned and that the landlord, Dr. Hodges, had taken possession of the premises and locked him out."

Appellees cite Stroble v. Tearl, 148 Tex. 146, 221 S.W.2d 556, as requiring an affirmance of this case. We do not agree.

What appellees lose sight of is that the contract with which we are concerned and with which Sec. 22, supra, deals is the *commission contract* and not the contract ultimately made between the principal (owner) and buyer. We will illustrate:

If an owner orally lists cattle for sale with a broker, the terms being plain and definite, and the broker interests A in the matter and A, after negotiating with the owner, agrees to buy the cattle and the ranch on which they are located from a single owner and in a single transaction, this should not and in our opinion does not deprive the broker of the commission for the sale of the cattle.

Assume also a valid oral listing of personalty and the broker furnishing a buyer who, after negotiating with the owner, instead of paying cash for the personalty trades a vacant lot for it. It is clear to us that the broker's right to a commission is not defeated by conveyance of the lot.

A contrary construction of Sec. 22 would permit brokers to lose earned commissions

by transactions on the part of the owner entirely foreign to the commission contract.

In Stroble v. Tearl, supra, the oral contract between the broker and the owner, i. e., the *commission contract*, related partly to realty and partly to personalty and not being divisible was held unenforceable because not in writing.

This case is entirely different. The commission contract dealt only with personalty. It cannot be defeated because, perhaps, real estate transactions entered into the trade finally consummated between the owners and the buyer.

The judgment of the trial court is reversed and judgment, upon the jury verdict, is here rendered for appellant in the sum of $390 plus interest until paid at the rate of 6% per annum from March 10, 1952.

Reversed and rendered.

On Motion For Rehearing.

Appellees argue that since the jury finding identified the property listed for sale only as "the property referred to in evidence" and since both real and personal property are mentioned in the evidence that all of such property is included in the jury finding.

A jury finding is entitled to a reasonable and sensible interpretation. It is true that real property is mentioned in the evidence several times. Appellant testified that he had an office at 117 West 5th Street; that he formerly had an office in the Nalle Annex; that he conferred with a client at the P. K. Grill who lived in the Wilke Funeral Home,—etc. etc. Could it be seriously contended that the jury finding should include these pieces of real estate?

Arguing this point further appellees state that the evidence is conflicting as to whether only personalty or both real and personal property was listed for sale. We find no evidence that any real property was listed by appellees with appellant for sale. Appellees did not admit listing any

property with appellant and appellant testified that only personal property was listed. As far as the lease on the club is concerned appellees had no right to assign or transfer such lease without the written consent of the lessor, a fact which the record does not disclose. It cannot be presumed that appellees would list property for sale which they had no right to sell.

Appellees also contend that since an indivisible consideration consisting of both real and personal property was received by them for the sale actually consummated that there is no basis for a judgment.

What appellees actually received or were promised for the sale of the pool hall fixtures and equipment was:

1. Assumption of rents on the club from July to December, 1950, inclusive, $1200, and an indemnity for any claims arising from the rental thereof from December 30, 1949.

2. Cancellation of the lease on the club and release of all indebtedness due or to become due thereunder.

3. Dismissal of a suit brought by the lessor of the club against them and cross action therein.

4. Assumption of $576 due on appellee Gober's note to J. B. Harris.

5. Assumption of $700 balance due on appellee Gober's note to National Billiard Manufacturing Company.

6. Execution and delivery of two notes each for $2750 by purchaser to appellees.

It is obvious that appellees have or will receive cash benefits from the sale in the definite amount of at least $7,976.

Since this amount exceeds the amount on which appellant claimed a commission it is immaterial that appellant by proper pleading and proof may have sued for and collected a greater commission.

The motion is overruled.