D. C. HALL ET AL V. J. L. HARD.

No. A-7117. Decided February 17, 1960.
Rehearing Overruled May 18, 1960.
(335 S.W. 2d Series 584)

566

*Rawlings, Sayers, Scurlock & Eidson* and *Nelson Scurlock,* all of Fort Worth, for petitioners.

The Court of Civil Appeals erred in holding that respondent was entitled to recover, since the transaction for which he seeks to recover a commission involved a sale of securities and he has failed to allege or prove that he was licensed as a broker for the sale of such securities; also that he had failed to allege or prove that he was licensed as a broker or salesman, under Article 6573a, Revised Civil Stats., for the sale of real estate. Breeding v. Anderson, 152 Texas 92, 254 S.W. 2d 377; Radford v. McNeny, 129 Texas 568, 104 S.W. 2d 472. Gregory v. Roedenbeck, 141 Texas 543, 174 S.W. 2d 585.

*Seth W. Barwise, Tilley, Hyder & Law* and *Thos. H. Law,* all of Fort Worth, for respondent.

In reply to points of petitioners cited; Teairl v. Gober, 257 S.W. 2d 782, writ of error dismissed; Eddins-Walcher Butane Company v. Calvert, 156 Texas 587, 298 S.W. 2d 93, writ of error refused; Standard Oil Co. of Texas v. State, 142 S.W. 2d 519, writ of error refused.

MR. JUSTICE GRIFFIN delivered the opinion of the Court.

This is a suit by respondent, Hard, against petitioners, Hall, et al to recover a commission. The parties will be referred to as they were in the trial court.

Hard, as plaintiff, alleged that by an oral contract defendant, Hall "employed plaintiff to attempt to find a buyer for the certificates, properties and other assets owned by said defendants;" that defendant, Hall, agreed to pay plaintiff a 5% commission if he would procure a buyer, ready, willing and able "to purchase these properties upon terms satisfactory to defendants." Plaintiff alleged that he procured a buyer, to wit, J. B. Braswell and Braswell Motor Freight Lines who entered into a formal contract to purchase the "Hall properties" for the sum of $1,500,-000; that this purchase was consummated after securing the necessary approval from the Interstate Commerce Commission. Plaintiff alleged that he was the one who interested Braswell

in "the Hall properties" while his employment by Hall was in full force and effect and that the "Hall properties" were sold to Braswell; therefore, plaintiff alleged, he was entitled to a 5% commission, namely $75,000, on the sale price of $1,500.000 paid by Braswell to defendant for such properties. Plaintiff further alleged that he had demanded payment from Hall and Hall had refused to pay him, whereupon he filed suit for recovery of the $75,000 commission and $15,000 attorney's fees.

Hall answered with a general denial. The case was tried to a jury. The trial court submitted three special issues, to which the jury answered (1) that Hall agreed to pay Hard a 5% commission if Hard would procure a buyer of the Hall Motor Freight properties on terms satisfactory to Hall; (2) Hard procured such a buyer and (3) $10,000 was a reasonable attorney's fee. There were no objections nor exceptions to the court's charge by either party.

Plaintiff filed a motion for judgment on the verdict. Defendant filed a motion for judgment non obstante veredicto. Among the grounds urged by defendants was that the sale of the Hall properties involved the sale of real estate, and plaintiff had not pleaded and proven that he was a licensed dealer. under the Real Estate Dealers License Act (Art. 6573a, Vernon's Annotated Texas Civil Statutes) as required by Section 19 of such Act. Defendants also alleged that the sale of the Hall Motor Freight Line properties included the sale to Braswell of capital stock in some of the corporations owned by Hall; that plaintiff was not a licensed dealer in securities required by Art. 581-34, V.A.C.S., as a condition precedent to a recovery of a commission on the sale of capital stock. The trial court sustained the defendants' motion for judgment non obstante veredicto and overruled plaintiff's motion for judgment on the verdict.

On appeal the Court of Civil Appeals reversed the trial court's judgment and rendered judgment for plaintiff against defendants for $75,000, plus $10,000 attorney's fees. 318 S.W. 2d 108.

We hold that the Court of Civil Appeals was in error in its judgment. We shall first dispose of defendant's claim that he was entitled to a judgment because plaintiff had no real estate dealer's license.

Section 4 of Art. 6573a defines a real estate broker as "any

person who, for another or others and for compensation or with the intention or in the expectation or upon the promise of receiving or collecting compensation: (a) sells, exchanges, purchases, rents or leases real estate; or (j) procures or assists in procuring of prospects, calculated to result in the sale, exchange, leasing or rental of real estate." At the time of plaintiff's employment by defendant to procure a purchaser ready, willing and able to buy the Hall properties, and at all times until the closing of the sale contract, Hall owned and used in his trucking business leases for longer than one year on terminal facilities, including real estate located in Jackson, Mississippi; Tulsa and Oklahoma City, Oklahoma; Dallas, Texas; and Monroe, Ouachita Parish, Louisiana. This latter lease had a provision whereby defendants had an option to purchase the leased property after ten years. All parties are agreed that it was necessary to the operation of a motor freight line that it have terminals in the principal cities served by it. The contract for the sale of the Hall properties, as submitted to and approved by the Interstate Commerce Commission, shows that Braswell had no terminals in Jackson, Mississippi; Monroe, Louisiana; or Tulsa and Oklahoma City, Oklahoma. Nowhere in plaintiff's pleadings did he make any allegations that the leases were not included in the Hall properties, nor did he allege that his listing contract was one other than for the sale of the whole of the Hall properties. The sale contract required the purchaser to "assume the leases of all those freight terminals where the leases are assignable, which are now under lease to Hall or Transport [Hall Transport Co., a corporation], true copies of said assignable leases being attached hereto, marked Exhibit J." Braswell further covenanted to save and hold Hall and Transport harmless in respect of such lease assumptions. Plaintiff argues that this provision binds only Braswell, but does not bind Hall to assign or transfer the leases on the terminals. A reading of the whole of the contract, however, shows that defendants were obligated to transfer and assign the leases. The contract further provides that it "is not severable and shall, as to each party, and as to all things required of each, be performable in its entirety." Plaintiff, Hard, testified that at the time of the oral contract between him and Hall, the leases were not mentioned by name. He testified that Hall wanted to sell his trucking operations; that Hall told him that if he could secure a buyer for the operations that he (Hall) would consider selling; that his conversation with Hall agreeing to pay a commission was a contract for the sale of the Hall trucking properties; that he was to sell for Hall everything in connection with the Motor Freight Lines; that nothing was said by either party that the leases were to be ex-

cluded but that the sale was to include everything that had anything to do with the trucking operations; that he and Mr. Hall were talking about selling the Motor Freight Lines.

On being questioned about his trade with Hall to pay the commission, Hard testified:

"Q. Now among the other assets owned by those companies were leases on terminals in Oklahoma and Louisiana. Did you, when you negotiated your trade, did you expect to leave out those leases?

"A. Everything that was involved in the Motor Freight Line.

"Q. Now they were the leases on the terminals. You know terminals are necessary for the operation of motor freight lines, did you?

"A. That's right.

"Q. All right. Did you expect to leave out those leases?

"A. Not the ones Mr. Hall had, no. I expected Joe Braswell to take them over, which would be natural."

In answer to the question, "what was it that you claim Mr. Hall employed you to do?" Hard testified "sell the operation, the Hall trucking operations," and again, "I intended to sell the whole thing in one lump sum."

All of the above testimony made a prima facie case that the leases on the terminals were included in the "Hall properties" which Hall employed Hard to sell. However, plaintiff Hard testified that he had nothing to do with the leases; that the price at which defendant Hall listed the properties for sale included only the Interstate Commerce Commission certificates under which defendant operated his truck line, and the furniture and equipment used in the business; that all that went with the properties was the certificates, furniture and equipment; and denied that his contract of employment covered the sale of the leases.

This being the state of the record a fact issue was raised as to whether the leases were included in the Hall properties. No issue was submitted to the jury, nor was any request made for

the submission of an issue determining the above fact. Plaintiff contends that the burden was on defendant to secure a finding that the Hall properties did include the leases. Defendant claims the burden was on plaintiff to secure a finding that the leases were not included in the Hall properties.

If the Hall properties, which Hard testified he was employed by Hall to sell, consisted, in part, of the leases on the terminals above set out, then Hard is seeking to recover a commission on the sale of real estate. Under the provisions of Sec. 19 of Art. 6573a, it was the burden of Hard to plead and prove he was a duly licensed real estate broker, or salesman, at the time the alleged cause of action arose. The leases being for a term of longer than one year were "real estate" within the terms of Art. 6537a. Stroble v. Tearl, 1949, 148 Texas 146, 221 S.W. 2d 556, 558; Robertson v. Scott, 1943, 141 Texas 374, 172 S.W. 2d 478, 479(2); 20-A Texas Jur. 374, Sec. 104.

**1,2** The Real Estate Dealers License Act is an exercise of the police power of the State to regulate a private business which affects the public interest. As such the business may be reasonably regulated by the State. Gregory v. Roedenbeck, 1943, 141 Texas 543, 174 S.W. 2d 585(1). The Legislature has seen fit to regulate the business of real estate dealers by requiring that anyone engaging in that business undergo investigation and examination by representatives of the State, and secure a license from the Texas Real Estate Commission. The business practices of the real estate dealers are regulated and certain practices are prohibited. The manner and method of conducting the business is prescribed in certain matters. It is made a criminal offense to engage in the business of real estate broker, or salesman, without having procured the license as aforesaid. In addition, Sec. 19 denies the use of the courts of our State to a real estate broker for the recovery of his commission unless such broker seeking recovery alleges in his pleadings and proves by the evidence introduced in the case that he was a duly licensed real estate broker, or salesman, at the time the alleged cause of action arose. The Legislature, having required such pleading and proof by the broker suing for his commission, we hold that when a fact issue is raised as to whether or not the properties sold by the broker included any real estate, the burden is upon the dealer or broker to secure findings that no real estate was included, and, therefore, he was not subject to the Real Estate Dealers License Act. Unless he does so, he cannot recover his commission. To hold otherwise would be to disregard the intent of the Legislature in its regulations and provisions contained in the Act.

**3** Our courts have required a strict compliance with the terms of the Real Estate Dealers License Act if a broker is to use the courts for recovery of his fees or charges for his services. In the case at bar it is undisputed that plaintiff was not a licensed real estate broker. On this phase of the case, therefore, he can only recover by showing that he was not employed to sell any real estate. If there is an issue as to whether or not his employment included the sale of any real estate, then he must secure findings that will relieve him of the requirements of the Act. If only the sale of personal property is involved, the broker is not under the terms of the Act.

**4** Plaintiff has no pleading alleging severability of the Hall properties, nor of his employment to sell only a portion of the same. There was one consideration covering the sale of all of the Hall properties in the contract of sale, and although there were certain itemizations in the purchase agreement, the contract specifically stated it was not a divisible contract. We hold that the contract of employment was an entire and indivisible one. Stroble v. Tearl, supra, p. 559(2), and authorities there cited.

The reasoning in the cases of Clark v. Eads, Texas Civ. App., 1942, 165 S.W. 2d 1019, wr. ref., w.o.m.; Swift v. Kelly, Texas Civ. App., 1910, 133 S.W. 901, no writ history; and Paine v. Eckhardt, et al., Texas Civ. App., 1918, 203 S.W. 459, no writ history, while not directly in point, support our holding that the burden was on Hard to secure a finding that no real estate was included in the Hall properties which he was employed to sell.

**5** Plaintiff contends that even though the sale of the Hall Motor Freight properties did involve real estate, and was governed by Art. 6573a, he is exempt from the provisions requiring him to plead and prove he had a real estate dealer's license by virtue of Sec. 6(1) of the Act. This section reads as follows:

"The provisions of this Act shall not apply to the advertising, negotiation or consummation of any purchase, sale, rental or exchange of, or the borrowing or lending of money on, real estate by any person, firm, or corporation when such person, firm or corporation does not engage in the activities of a Real Estate Broker as an occupation, business or profession on a full or part time basis. Plaintiff did not plead nor prove that he came within the terms of Section 6(1). In fact, that contention was never urged by the plaintiff except in this court. We do not find it necessary to construe the meaning of Section 6(1) for the

reason that under this record plaintiff is not entitled to the benefit of Section 6(1).

In 130 A.L.R., p. 440, et seq., is found a thorough and learned discussion of the burden of allegation and proof in a cause of action, or a defense thereto, in a case where the principal enacting clause of a statute is subsequently modified in some way by another clause, phrases, section, subdivision, etc. The rule of law governing such cases is set out in Annotation II, a,2, p. 443, as follows: "Where an exception appears in a different section, subdivision, or clause from that containing the enacting words of a statute, or appears in another statute, the view is taken in many cases that the party relying upon the statute need not allege facts showing that the present case does not come within the exception such allegations being matter to be pleaded by the opposite party."

With regard to the proof, this same authority on p. 479, quotes from Interstate Commerce Commission v. Baird (1904), 194 U.S. 25, 26, 37; 48 L. Ed. 860, 865, 866; 24 S. Ct. 563, as follows: " 'The general rule of law is that a proviso carves special exceptions only out of the body of the act; and those who set up any such exception must establish it, etc.' Ryan v. Carter (1876) 93 U. S. 78, 83, 23 L. Ed. 807, 809; United States v. Dickson (1841) 15 Pet. (U.S.) 141, 165, 10 L. ed. 689, 698. The rule applied to construction is applied equally to the burden of proof in a case like this." Plaintiff seeks the benefits of the exemption provided in Section 6(1). The burden of alleging and proving that he was exempt under the terms of this section was upon him. Lane v. Bell, 1909, 53 Texas Civ. App. 213, 115 S.W. 918, wr. ref.

6 Since a fact issue was raised by the evidence as to whether or not Hard's employment contract included the sale of real estate, the trial court was in error in rendering the judgment non obstante veredicto. There was no issue submitted to the jury, and, of course, no finding by the jury as to whether or not plaintiff, Hard's contract included real estate. The trial court having erroneously rendered judgment non obstante veredicto, there can be no presumptive finding by the trial court on the omitted issue in order to support the judgment rendered by the trial court. Rodriguez v. Higginbotham-Bailey-Logan Co., 1942, 138 Texas 476, 160 S.W. 2d 234; Williams v. Texas Emp. Ins. Ass'n., Texas Civ. App., 1939, 135 S.W. 2d 262, wr. ref.

Plaintiff's cause of action was based upon one ground of

recovery, to wit: the contract to pay him a commission for procuring a purchaser for the Hall properties. One of the elements of this ground of recovery, under the facts as they developed upon the trial, was whether or not the terminal leases were a part of such Hall properties. This question presents a fact issue. There being no request for a jury issue on this question, and therefore no jury finding, it was for the trial court to make a finding on this issue, upon proper request. Rule 279, Franki's Vernon's Annotated Rules of Civil Procedure. This court has no power to make findings of fact, but the trial court does possess such power.

Defendant contends that the Hall properties which were sold consisted, in part, of capital stock of a corporation or corporations. While there is evidence in the record supporting such a finding, the plaintiff denied that he was employed to sell any securities, i.e., capital stock of corporation. Plaintiff testified that he was employed to sell only the certificates of necessity and convenience owned by Hall and the equipment used in the operation of the Motor Freight Line operations.

Art. 581-34 provides, in part, that "no person or company shall bring or maintain any action in the courts of this state for collection of a commission for services rendered in the sale or purchase of securities * * * without alleging and proving that such person or company was duly licensed under the provisions hereof * * *." It is undisputed that plaintiff was not licensed under the Securities Act. The record in this case raised a fact issue as to whether or not the sale of the Hall properties consisted in part of the sale of securities as defined in the Securities Act. No issue was submitted nor requested on which a finding could have been made by the jury on this question.

What we have said above in regard to the Real Estate Dealers Act, the necessity for a license, and the burden of proof upon the unsubmitted issue applies with equal force to this phase of the case at bar. The trial court should also make a finding as to this issue, upon proper request. Based upon the trial court's findings upon this issue, and upon the issue as to real estate being involved in the sale of the Hall properties, the Court will enter its judgment.

We therefore must remand the cause to the trial court with instructions to proceed with the disposition of the cause under Rule 279 just as though no judgment non obstante veredicto had been entered. Rodriguez v. Higginbotham-Bailey-Logan Co.,

Texas Civ. App., 1943, 172 S.W. 2d 991, wr. ref.; *Id.*, 138 Texas 476, 160 S.W. 2d 234.

The judgment of the Court of Civil Appeals is reversed and this cause is remanded to the trial court for further proceedings in accordance with this opinion.

Opinion delivered February 17, 1960.

Associate Justice Culver not sitting.

MR. JUSTICE SMITH, dissenting.

The trial court erroneously entered a judgment non obstante veredicto in favor of the defendant, Hall. The majority so holds in that it agrees that the evidence raised a fact issue as to whether the oral contract between Hall and Hard involved the sale of real estate. Since I am not in accord with the statement of the case as set out in the majority opinion, and since I do not agree with Hall that as a matter of law the evidence shows that real estate was included, I have chosen to set out below evidence which in my opinion raises such fact issue.

It is my position that a general remand to the trial court for a new trial is in order. The majority, after placing great emphasis on the testimony in favor of Hall and against Hard, follows up with a remand to the trial court with specific instructions to make a finding on the issue and proceed with the disposition of the cause under Rule 279, just as though no judgment non obstante veredicto had been entered. The majority leaves the trial court in a state of uncertainty as to how to proceed by citing the case of Rodriguez v. Higginbotham-Bailey-Logan Co., Texas Civ. App. (1943), 172 S.W. 2d 991, wr. ref. *Id.*, 138 Texas 476, 160 S.W. 2d 234. No doubt, when the trial judge reads the case of McAfee v. Travis Gas Corporation, 137 Texas 314, 153 S.W. 2d 442, cited in support of this court's holding in the Rodriguez case, he will be doubly confused. In view of the emphasis on the facts in favor of Hall, it appears to me that the majority has unintentionally told the trial judge that a presumed finding in favor of Hall would come into play in the event he should enter judgment in favor of Hall on the verdict. On the other hand, if the trial court should be of the view that the evidence would support a finding in favor of Hard, then a presumed finding on the vital omitted issue would support a judgment in favor of Hard. This case should be sent back to the trial court free from expressions such as we have in the

majority opinion in regard to the evidence. Under the circumstances, I feel that it is essential for me to set out the facts which support my conclusions on the questions of law presented here.

The plaintiff, Hard, alleged and the jury found that the defendant, Hall, agreed to pay plaintiff a 5 per cent commission if plaintiff would procure a buyer upon terms satisfactory to defendant, for the Hall Motor Freight Line properties, and the jury further found that the plaintiff procured the buyer, Braswell.

The defendant filed a general denial and demanded strict proof of the allegations contained in plaintiff's petition. No special defense was pleaded, such as a plea that the contract alleged by Hard being oral and being one involving the sale of real estate was not enforceable. The defendant did not file a motion for instructed verdict, but elected to wait until after the verdict and then filed his motion for judgment notwithstanding the verdict. Even then, he made no claim that an oral contract for the sale of real estate was unenforceable and that plaintiff could not recover his commission. Instead, his ground for judgment non obstante in this particular was on the basis that the plaintiff was relying upon the written purchase agreement contract dated October 29, 1955, between Hall and Braswell to prove that he was the procuring cause of the sale which was later consummated, *Hall's contention further being that since the purchase agreement involved real estate, and since the plaintiff failed to allege and prove that he was a licensed real estate broker or salesman as required by the Statutes of Texas his cause of action must fall.*

The plaintiff did not sue upon the written contract between Hall and Brasswell. The evidence raised a fact issue as to what constituted the Hall Motor Freight Line properties. Mr. Hard testified that he had nothing to do with the leases, and that the leases were not mentioned in his discussions leading up to the oral agreement with Hall. Hard testified that Hall "wanted $1,600,000.00 for it and he would pay me 5% on $1,600,000.00, that he wanted to net or — I believe he said he wouldn't sell it to anybody unless he netted $1,500,000.00 out of it. so then he [Hall] told me if I would come back in two or three days I could pick up the ICC reports, and that's about all that was said at that meeting." "Q. That he wanted $1,600,000.00 for it. A. That's right. That's for the franchise and the equipment, of the D. C. Hall Company, and the equipment in the Hall Equip-

ment Company." Mr. Hard was asked what Mr. Hall actually said — referring to the oral agreement. The petitioner's attorney, as a part of the question, stated: "I don't think we can arrive at the terms of the contract except from what was said * * *." Mr. Hard's answer was: "Mr. Hall told me that for the sale of the certificates, the equipment being used by the motor freight line and the Hall Equipment Company and the D. C. Hall Transport Company he wanted $1,600,000.00 and would give me a commission of 5% on the basis of $1,600,000.00." At another point in the cross-examination, when the attorney was specifically inquiring as to whether Hard was attempting to sell the leases to Mr. Braswell, Mr. Hall answered: *"All that went with it was the equipment."* [Emphasis added]. A jury could have construed this answer to mean that the leases were not *required* to be sold. The evidence shows that Braswell, at the time of the oral agreement between Hard and Hall, was the owner of Terminal Properties in Los Angeles, El Paso, Fort Worth, Dallas, San Antonio, and Houston, which perhaps explains why the leases were not mentioned in the discussions between Hard and Hall. Mr. Hall's attorney made repeated efforts to have Mr. Hard admit that the leases were a part of the property to be sold, but to no avail. Mr. Hard would only go so far as to say in effect that he "expected" the leases to be transferred. However, when the agreement was finally signed between Hall and Braswell, it did not *require* the sale of the leases. It thus appears and a jury could have easily drawn the conclusion that the agreement concerning the leases was an ancillary or side agreement between Hall and Braswell. To point out all the facts and circumstances showing an issue of fact as to whether or not the leases were to be sold by Hard would unduly lengthen this opinion. The question is one for a jury to decide. A jury would have the power to accept a part of Hard's testimony, and reject any part of his testimony. The jury is the judge of the credibility of a witness and the weight to be given this testimony.

Hall's motion for judgment non obstante veredicto asserts that Hard relied on the written contract between Hall and Braswell to show that he was the procuring cause of the sale. The motion assumes that real estate was to be sold, and, at the same time, admits that Hard testified that he was not seeking to recover any commission for the sale of terminal leases. In this connection, non-claim of a commission for the sale of the leases is consistent with his testimony that the leases were not involved in the oral agreement between Hall and Hard. Paragraph 5 of the motion for judgment non obstante veridicto con-

tains an admission that Hard testified affirmatively that he was not employed to sell any real estate and no real estate was mentioned. However, the paragraph goes on to say in effect that this cannot be true because the contract between Hall and Braswell involved the sale of the leases. The motion alleges that under such circumstances it was encumbent upon Hard to allege and prove that he was duly licensed under the Texas Real Estate Act to engage in the business of a real estate broker. The motion for judgment non obstante presents the contention that judgment must be entered for Hall for the reason that Hard failed to allege and prove what properties he was employed to sell. No special exceptions were lodged against Hard's pleadings in this regard, therefore, the pleadings were sufficient. The fact that the leases were later conveyed to Braswell under the terms of a contract not agreed upon by the plaintiff does not mean that as a matter of law the leases were within the scope of the oral agreement between Hall and Hard. A jury could have found that the leases were *not required* under the oral agreement between Hard and Hall to be sold. The record shows that it is customary for commissions to be paid under oral contracts such as that entered into between the plaintiff and defendant in this case. The fact that plaintiff was not a licensed real estate agent or broker in no way affects his right to recover a commission for the sale of defendant's trucking operations.

The question of whether or not the contract involved the sale of real estate was one of fact, and was injected into the case by the defendant as a defense to plaintiff's cause of action. The burden rested with the defendant to prove that real estate was included. In order to sustain the action of the trial court in granting judgment non obstante veredicto, it must be determined that there was no evidence of probative force upon which the jury could have made a finding that the real estate (leases) was not involved. Broussard v. Burton Construction & Shipbuilding Co., Texas Civ. App., 265 S.W. 2d 665, 675; reversed on other grounds, Burton Construction & Shipbuilding Company, Inc. v. Broussard, 154 Texas 50, 273 S.W. 2d 598. The evidence required a submission of the issue. Judgment could not be rendered for Hall without an affirmative answer in his favor. An omitted issue or finding cannot in itself form the basis for the judgment. The rule that an issue not submitted and not requested is deemed as found by the court in such manner as to support the judgment is not applicable in this case. All issues which were submitted were answered against the defendant. No finding was made which would support the judgment non obstante veredicto. There is nothing in Rule 279, Texas

Rules of Civil Procedure, which placed the duty upon the plaintiff, Hard, in the present case to request the submission of the defensive issue that a part of the property involved consisted of real estate. It was the burden of the defendant to request the issue presenting his ground of defense.

It is quite clear that the issue of whether or not the contract involved real estate is an ultimate and controlling issue raised by the evidence. An affirmative answer to this issue is essential to the defense. This is absolutely necessary to form a basis of a judgment for the defendant, Hall. See Wichita Falls & Oklahoma Ry Co. v. Pepper, 134 Texas 360, 135 S.W. 2d 79 (syls. 4 and 5.)

I call attention to the fact that the Hall properties are not specifically described in the petition, but they were described in the contract of purchase entered into between Hall and Braswell. It is my position that the question here is to be determined by ascertaining from the evidence the nature of the properties involved in the oral agreement between Hall and Hard. The testimony of the plaintiff would support a jury finding that the Hall properties involved in the oral agreement between plaintiff and defendant, and the property required by Hall in the oral agreement to be purchased consisted of the following:

"(a) 'the furniture, fixtures and equipment of D. C. Hall Transport, Inc.'

"(b) 'the trucks, tractors and semi-trailers of D. C. Hall Transport, Inc.'

"(c) 'the trucks, tractors and semi-trailers of Hall Equipment Company.'

"(d) 'the inventory, parts and material of D. C. Hall Transport, Inc.'

"(e) 'the inventory, parts, materials and supplies of Hall Equipment Co.'

"(f) 'the going concern and organization together with the certificates and operating rights of D. C. Hall Co.' "

As a matter of fact, the contract between the seller and purchaser does not list the lease (terminals) among the items

which made up the Hall Motor Freight Line properties. Hard testified that the leases (terminals-real estate) were never discussed in his conversation with Hall or with Mr. Braswell's attorney, Tom Christopher. The plaintiff did not at any time discuss or have any direct contract with the purchaser.

The contract between Hall and Braswell did not obligate or require Hall to assign or convey the leases. The leases or terminals or real estate are not mentioned anywhere in Hall's "Representations and Warranties" or the "Covenants" which Hall undertook. They are not mentioned in the "Explanation of the Transaction" or in the statement immediately following the "Purchase Agreement." The leases, however, are mentioned in Braswell's covenants on page 11 of the purchase agreement. The reference reads:

"VIII * * * * (3) It (Braswell) will assume the leases of all those freight terminals, where such leases are assignable, which are now under lease to Hall or to Transport, true copies of said assignable leases being attached hereto, marked Exhibit 'J' pages 1 to 39, inclusive, and made a part hereof; Braswell further covenanting in this respect to save and hold Hall and Transport harmless in respect of such lease assumptions."

As I understand this record, "trucking operations" may or may not include terminals. They are not necessarily a part of the trucking operations, likewise they were not necessarily a part of the "Hall Motor Freight Line properties." As heretofore pointed out, no mention whatever was made of the leases to Hard, and Hall did not require the plaintiff to procure a purchaser for the leases. Hall, even under the purchase agreement, could have kept the leases himself; or assigned them to some third party, or arranged with original lessors to cancel them.

Mr. Christopher, the attorney for Braswell, in response to questions asked by counsel for defendant, corroborated the plaintiff's testimony.

I wish to respectfully reiterate that plaintiff, Hard, in this case, seeks to recover on his oral contract with defendant, Hall, to find a buyer, and not under the written contract which Hall and Braswell finally worked out between themselves.

As was said in Parkey v. Lawrence, Texas Civ. App., 284 S.W. 283, 287, wr. dism.:

"There is nothing peculiary in the contract of a broker with his principal. It is governed by the laws applicable to the ordinary contract. * * * "

A jury could here properly draw the inference that the Hall-Braswell contract was merely the method adopted by those two parties to convey the Hall Motor Freight Line properties. The plaintiff here had nothing to do with the details of that contract, in fact, he did not come in personal contact with Mr. Braswell. Plaintiff is not suing for a commission on the leases covering freight terminals leased by Hall from various third parties, as was the case, supra, cited by the majority. The consideration listed in the contract between Braswell and Hall did not include any consideration for Braswell's agreement to assume any leases on freight terminals. It does not mention any leases or any real estate whatsoever. Instead of Braswell paying for the leases, it is logical to construe the language of the contract to mean that Hall wanted out from under the leases and Braswell agreed to hold him "harmless." It has been held that an oral commission contract dealing only with personality cannot be defeated by the provisions of the Real Estate Act requiring written agreement for recovery of comission for sale of realty, notwithstanding that real estate transactions entered into the trade finally consummated between owner and buyer. See Teairl v. Gober et al., Texas Civ. App., 257 S.W. 2d 782, wr. dism. Hall did not require Braswell to purchase the leases. Under paragraph 8 — Braswell Covenants — will be found the following sgnificant subdivision:

"(4) That the reasonable fair market value of all of the properties herein required to be transferred, is the sum of ONE MILLION FIVE HUNDRED THOUSAND ($1,500,000.00) DOLLARS, subject to such depreciation as will occur between the date hereof and the closing date as herein defined, and as such depreciation is herein provided for; that such reasonable value has been arrived at by the parties hereto, and particularly by D. C. Hall and J. V. Braswell, based upon their long and successful experience in the operation of common carrier motor carrier services; the actual reasonable and intrinsic value of the physical properties involved; the base earning record of Transport resulting from its operations under the authority of the certificates of convenience and necessity described in Exhibits 'A', 'B' and 'C' hereof, and J. V. Braswell's consideration of its value when operated as a subsidiary or division of Braswell; and at arm's length negotiations."

The evidence, as reflected by the oral testimony and the exhibits attached to the written contract between Hall and Braswell, would support a finding that the leases were not a part of the Hall Motor Freight Line properties which the plaintiff and defendant agreed upon to be sold, and that the leases were not required to be transferred.

There are other points presented. Such points are without merit. I shall refer briefly to the only other point mentioned by the majority. The chief contention of Hall throughout has been that plaintiff was not a licensed broker for the sale of securities, and, therefore, had no right to recover a commission. This was his first reason assigned in support of his judgment non obstante veredicto. It is the question raised by his first point of error in this court. In fact, 24 pages of his 58-page application for writ of error are devoted to this question. His entire argument is centered around certain provisions in the written contract between Hall and Brasswell. Briefly, those provisions referred to the organization of corporations and the transfer of capital stock of such corporations. Here again, as argued by this writer on the real estate license question, plaintiff seeks to recover on his oral contract with the defendant, Hall, to find a buyer— *not* under the Hall-Brasswell contract which Hall and Braswell worked out between themselves. There is no evidence that the plaintiff agreed to sell securities. The Hall Motor Freight Line properties were not securities within the meaning of the Securities Act. The record fully shows that the parties (Hall and Hard) did not contemplate that Hard was to act as a vendor or broker of securities. If the method subsequently adopted by the Hall-Brasswell contract to convey the trucking operations is to be permitted to vary or change the terms of the oral contract between plaintiff and defendant, then it seems to me that in transactions involving the sale of personalty, the commission man in every instance could be deprived of his commission solely on the basis of contracts and agreements with which he had no concern. The plaintiff here was not concerned with and had no part in the detailed and complicated contract entered into between Hall and Braswell. The petitioner contends that the sale of the *Hall properties as eventually* consummated, included corporate stock, and that plaintiff, therefore, was attempting to sell securities. Under no circumstances can it be said that a fact issue was raised as to whether the oral agreement involved the sale of securities.

The holding by the majority that the evidence raised a fact issue as to whether real estate was involved has been rendered

of no consequence by the holding in the very next paragraph that "Under the provisions of Sec. 19 of Art. 6573a, it was the burden of Hard to plead and prove he was a duly licensed real estate broker, or salesman, at the time the alleged cause of action arose." If the majority is correct in so holding, then it would make no difference what a jury or court would find in regard to the fact question. A favorable finding would not aid Hard, because it is undisputed that he did not have a real estate license, neither did he have a securities license.

If a fact issue was raised as to whether or not real estate was involved, then, regardless of where the burden of proof is to be placed, the trial court committed error in sustaining Hall's motion for judgment non obstante veredicto. Accepting without agreeing that the burden was on Hard, I contend that this court "should remand the case for another trial if it shall appear that the justice of the case demands another trial." See Rule 505, Texas Rules of Civil Procedure; Hicks v. Matthews, 153 Texas 177, 266 S.W. 2d 846; Associated Oil Co. v. Hart, Texas Com. App., 277 S.W. 1043. In the latter case the court said:

"It is the rule, where a judgment has been reversed, to remand to the trial court rather than render, where the ends of justice will be better subserved thereby. Such remanding has often been ordered to supply additional testimony, to amend the pleadings, and even to show jurisdiction."

In the present case, the motion for judgment non obstante veredicto was granted on what I conceive to be an erroneous theory of law. One of the strongest points in the motion non obstante was that real estate was as a matter of law involved, and that before Hard could recover, he must have alleged and proved that he had a valid real estate license from the State of Texas. Even under the majority view, the court has now found error on the part of the trial court, and it remains for us to determine the kind of judgment to enter. Under the circumstances, I can see no valid reason for not following the long established rule and remand this case to the trial court for a new trial. It would be an injustice to hold that a fact issue was raised, and not give Hard an opportunity to replead and allege and prove that no part of the property involved in the oral agreement was real estate. This he would be entitled to do under a holding that the case was tried on the wrong theory. The action of the majority takes away from the jury the power to decide the question.

My view is that the judgment of the Court of Civil Appeals should be reversed and the cause should be remanded to the trial court for a new trial.

Opinion delivered February 17, 1960.

MR. JUSTICE HAMILTON, dissenting.

I agree in the main with Justice Smith's dissenting opinion in holding that the burden of establishing that the sale of real estate and securities was contemplated in the contract between Hard and Hall was on Hard. Hall did not request an issue on the disputed issues and should be held to have waived them. Be that as it may, I think the majority has made an erroneous disposition of the case even under its holding. The Court of Civil Appeals has held that there was sufficient evidence to support the finding of the jury on the issues submitted. That we cannot disturb, and the majority opinion does not seek to disturb it. The Court of Civil Appeals further has held that the evidence did not establish as a matter of law that the contract between Hall and Hard contemplated the sale of real estate or of securities, and this court has upheld that holding. The Court of Civil Appeals, based on its holding on the two points above, said that the trial court was in error in rendering a judgment non obstante veredicto and rendered judgment on the verdict which the trial court should have rendered, as is required by Rule 434, T.R.C.P., which in part says:

"When the judgment or decree of the court below shall be reversed, the court shall proceed to render such judgment or decree as the court below should have rendered, except when it is necessary that some matter of fact be ascertained or the damage be assessed or the matter to be decreed is uncertain, in either of which cases the cause shall be remanded for a new trial."

When plaintiff in the trial court made his motion for judgment on the verdict there had been no finding on the disputed issue of whether real estate or securities were involved. There had been no request by either party for a finding by the court on that issue. Consequently, the trial court, not being able to make a finding on the disputed issue, could enter but one judgment, and that was on the verdict. This court is reversing the Court of Civil Appeals and remanding the cause to the trial court when it has not pointed out one error that the Court of Civil Appeals has committed. Rule 324, T.R.C.P., in part provides:

"* * * When judgment is rendered non obstante veredicto or notwithstanding the finding of the jury on one or more special issues, the appellee may bring forward by cross-point contained in his brief filed in the Court of Civil Appeals any ground which would have vitated the verdict or would have prevented an affirmance of the judgment had one been entered by the trial court in harmony with the verdict, including although not limited to the ground that one or more of a jury's findings have insufficient support in the evedence or are against the overwhelming preponderance of the evidence as a matter of fact * * *. * * * The failure to bring forward by cross-points such grounds as would vitiate the verdict shall be deemed a waiver thereof, * * *."

Petitioner Hall brought to the Court of Civil Appeals three cross assignments of error. Two of them raised objections to the admission of testimony. The third one raises the question of the overwhelming weight and preponderance of the evidence. The petitioner Hall brought to this court only the two evidence questions covered in his cross assignments of error in the Court of Civil Appeals. The majority opinion does not even pass on these points.

The petitioner did raise in the Court of Civil Appeals by way of counter proposition the questions whether or not as a matter of law the contract between Hard and Hall contemplated the sale of real estate and the sale of securities, and these questions are probably covered in his points of error Nos. 1 and 4 in this court, on which we granted the writ of error, but this court has held against the petitioner on those points by holding that the evidence does not show, as a matter of law that the contract between Hall and Hard contemplated the sale of real estate and securities. Consequently, this court in its majority opinion has not sustained petitioner on any of his points claiming error of the Court of Civil Appeals.

This court, in the case of Le Master v. Fort Worth Transit Co., 138 Texas 512, 160 S.W. 2d 224, in an opinion written by Judge Critz involving a case tried and appealed prior to the effective date of amended Rule 324, T.R.C.P., held that where the trial court had erroneously granted a motion for judgment non obstante veredicto that the case be remanded to the district court with instruction to enter judgment on the verdict of the jury. In that case the court said that after entry of judgment by the trial court on the verdict for plaintiffs that defendants may present their motion for new trial and if the motion is

overruled, they have their appeal. After quoting from Rule 324, the Court had this to say:

"This case was tried and appealed before the effective date of the above-quoted provision of Rule 324. We therefore do not apply it here. We deem it proper, however, to call attention to the fact that it will be the duty of this Court to apply such provision in cases where judgment non obstante veredicto was rendered subsequent to its effective date. We interpret the above-quoted provision to mean that where on appeal the appellate court determines that judgment non obstante veredicto was erroneously entered, such court will reverse the judgment of the trial court and enter judgment in harmony with the verdict, unless the appellee is able to present such error against himself as would have prevented an affirmance of the judgment had one been entered by the trial court in harmony with the verdict. The filing of points of error by the appellee will be treated as a necessary prerequisite to the right to have such errors considered on appeal. It will be sufficient for the appellee to present his points of error in his brief. Rules 374, 418(b), 420."

This court in its majority opinion has not sustained any point presented by the petitioner Hall which would have vitiated the verdict or would have prevented an affirmance of the judgment had one been enterd by the trial court in harmony with the verdict. Consequently the Court of Civil Appeals should be upheld in entering judgment on the verdict of the jury.

Opinion delivered February 17, 1960.

Rehearing overruled May 18, 1960.