**COASTAL PLAINS DEVELOPMENT CORPORATION et al., Appellants,**

v.

**MICREA, INC., Appellee.**

**No. 7930.**

Court of Civil Appeals of Texas, Beaumont.

June 30, 1977.

Rehearing Denied July 28, 1977.

L. B. Kee, Angleton, Jack L. Andrus, Pasadena, for appellants.

Jon Mercer, Houston, for appellee.

STEPHENSON, Justice.

This is an action for damages for breach of contract. Trial was by jury, and judgment was rendered for plaintiff on the verdict. The parties will be referred to here as they were in the trial court.

Plaintiff, Micrea, Inc., and defendants, Coastal Plains Development Corporation, et al., entered into a written contract dated July 31, 1970. Such contract showed defendants were the owners of a certain 200-acre tract of land in Brazoria County, which it agreed to subdivide as shown by a map. Plaintiff was given an option to purchase the lots in the subdivision and also to conduct a sales program for the sale of the lots. Plaintiff was authorized to sell the lots on a contract of sale basis. The cash down payment for the sale of the lots was to be collected by plaintiff if it did not exceed 20 percent of the selling price; and, if it amounted to more than 20 percent, the excess would be delivered to defendants. It was estimated the 20 percent would cover overhead expenses of plaintiff, and, if it did not, then defendants would pay the deficiency to plaintiff, monthly. Defendants were solely responsible for payment of surveying and engineering costs as well as the cost of road construction and maintenance. The net profits were to be divided equally between plaintiff and defendants, after payment of all expenses incurred in connection with this development, including the cost of the land, not to exceed $800 per acre.

The primary question for determination on this appeal is whether or not plaintiff

had to allege and prove it was a licensed real estate broker in order to bring and maintain this cause of action. Tex.Rev.Civ. Stat.Ann. art. 6573a (1969) (The Real Estate License Act) provided in Section 19, at the time this cause of action arose as follows:

"No person or company may bring or maintain any action for the collection of compensation for the performance in this State of any of the acts set out in subdivision (1) of Section 4 hereof without alleging and proving that the person or company performing the brokerage services was a duly licensed real estate broker or salesman at the time the alleged services were commenced; or was a duly licensed attorney-at-law as exempt from the provisions of this Act by Section 6."

*Subdivision (1) of Section 4* of that Act reads as follows:

"(1) The term 'Real Estate Broker' shall mean and include any person who, for another or others and for compensation or with the intention or in the expectation or upon the promise of receiving or collecting compensation:

(a) Sells, exchanges, purchases, rents or leases real estate;

(b) Offers to sell, exchange, purchase, rent or lease real estate;

(c) Negotiates, or offers or attempts or agrees to negotiate the sale, exchange, purchase, rental or leasing of real estate;

(d) Lists or offers or attempts or agrees to list real estate for sale, rental, lease, exchange or trade;

(e) Appraises or offers or attempts or agrees to appraise real estate;

(f) Auctions, or offers or attempts or agrees to auction real estate;

(g) Buys or sells or offers to buy or sell, or otherwise deals in options on real estate;

(h) Collects or offers or attempts or agrees to collect rentals for the use of real estate;

(i) Advertises or holds himself out as being engaged in the business of buying, selling, exchanging, renting or leasing real estate;

(j) Procures or assists in the procuring of prospects, calculated to result in the sale, exchange, leasing or rental of real estate;

(k) Procures or assists in the procuring of properties calculated to result in the sale, exchange, leasing or rental of any business enterprise, or sells, exchanges, purchases, rents, or leases any business enterprise;

(*l*) Subdivides real estate into two or more parts or tracts which are to be sold, leased, exchanged or rented to others, or for the purpose of erecting buildings for residential or business purposes to be sold, leased, exchanged or rented."

On September 30, 1970, the written contract was amended to increase the amount of land from 200 acres to 720 acres. On that same date a bank loan was closed in the amount of $180,000, and both plaintiff and defendants signed the note. Development of the property began as agreed, and plaintiff conducted its promotional activities, and defendants conducted their surveying, engineering and construction. Some $200,000 in land was sold under contracts and the down payments retained by plaintiff. However, on October 1, 1970, when plaintiff submitted its expense summary, reflecting an excess of some $13,000 in expenses over receipts, this was not paid. The road building stopped, and later this suit was filed. The evidence shows that Jack Adler, plaintiff's president, was a licensed real estate broker throughout 1970, and that such a license was issued to plaintiff September 2, 1970.

The jury made these findings: Defendants breached the contract by failing to pay the expense money; that plaintiff suffered a loss of profits under the contract in the amount of $109,695; that defendants suffered no loss as a result of the plaintiff's acts. In the judgment plaintiff recovered the $109,695, plus tne stipulated amount of expense money mentioned above.

From a study of the record as a whole, we have come to the conclusion that

the relation between plaintiff and defendants is that of a joint venture. Even though it is written in the last paragraph of the contract that neither a partnership nor a joint venture should be constituted, the well recognized rule of law is that the relationship is what the terms make them and not what they call themselves. See *Neece v. A.A.A. Realty Co.*, 159 Tex. 403, 322 S.W.2d 597, 600 (1959).

Justice Keith, of this court, has written two excellent opinions on this subject, *Lane v. Phillips*, 509 S.W.2d 894 (Tex.Civ.App.—Beaumont 1974, writ ref'd n. r. e.), and *Ives v. Watson*, 521 S.W.2d 930 (Tex.Civ.App.—Beaumont 1975, writ ref'd n. r. e.). Reference is here made to those two opinions as to what it takes to constitute a joint venture. The contract before us creates a relationship in the nature of a partnership in the joint prosecution of a particular transaction for mutual profit. The necessary ingredients, a community of interest and a participation in the profits, both exist. As stated more in detail above, defendants were obligated to take care of the surveying, engineering, construction, and maintenance, and plaintiff, the promotion and sale. After the deduction of all expense, including the cost of the land, the net profits were to have been divided equally.

■ The agreement between these parties provides for the division of profits but makes no mention as to losses. We are well aware that the general rule is for an agreement to constitute a partnership or joint venture the parties must share in the profits and the losses. The agreement before us does *not* provide that plaintiff will not share the losses, but is entirely silent as to the losses. We hold that plaintiff would have been liable for one-half of the losses as a matter of law, by reason of the fact that under this agreement the parties had become joint adventurers. We quote from *Thompson v. Schmitt*, 115 Tex. 53, 274 S.W. 554, 560 (1925), quoting Chief Justice Pleasants in *Wells v. MacKay Telegraph-Cable Co.*, 239 S.W. 1001, 1006 (Tex.Civ.App.—Galveston 1922, no writ), as follows:

" 'Whatever may be the rule in other jurisdictions, it seems to be well settled by the decisions of our courts that, when two or more persons associate themselves together for the purpose of carrying on a business enterprise for their mutual profit, the persons so associated are jointly and severally responsible for the debts incurred in the conduct of such business unless such business association is organized as a limited partnership or a corporation under our statute providing for such organizations, or specially contracts with those with whom the association deals that only the funds and property of the association shall be held liable.' "

The fact that this was a joint venture removes this transaction from the requirement of Sections 4 and 19 set out above. Clearly, under the Real Estate License Act, a person or company does not have to have a license for selling his or its own land. Subdivision 1 of Section 4 makes it crystal clear that it is only when the listed acts from *(a)* to *(l)* are performed "for another or others" that the license is required.

Apparently, this is a case of first impression, and there are no other cases in Texas involving a joint venture. Our position in construing this Act is strengthened by the fact that the Legislature included Section 6 Subdivision (3) in the Act which exempts anyone acting as an attorney-in-fact under a duly executed power of attorney. It is, therefore, obvious that a person not only can sell his land without a license but may also authorize an attorney-in-fact to do so.

This is not the usual transaction between a landowner and a real estate broker with an agreement to sell the land on a commission basis. This is a transaction in which each party had *mutual promises and obligations* to carry out, and, at the end, the *profits* would be divided equally. Plaintiff did not sue for a commission for real estate sold but for breach of contract. Plaintiff recovered its stipulated expenses and its damages for breach of contract. Section 19 does not prohibit the bringing of this cause of action.

AFFIRMED.

KEITH, Justice, dissenting.

I respectfully dissent.

On page six of the contract between the parties, dated July 31, 1970, only the signatures of the parties and this language appear:

"It is expressly understood and agreed that the performance by the respective parties of their respective obligations under the terms of this contract shall not constitute the parties as partners in connection therewith and neither is the performance of this contract by the respective parties to be considered a joint venture, but to the contrary each party shall be solely responsible for the performance of the respective obligations herein contracted to be undertaken by each respective party."

Ordinarily, as said in *Park Cities Corp. v. Byrd*, 534 S.W.2d 668, 672 (Tex.1976), the rule followed by the courts is stated in this language:

"The agreement of the parties is to be controlling of our decision and we shall construe and interpret their agreement pursuant to the applicable law of contracts."

Yet, the majority—in the face of explicit language disavowing any intention to create a joint venture and despite clear language refusing to share losses in the undertaking—has found that a joint venture exists. And, having made this judicial determination of intention, the court has created a vehicle which negates the applicability of the Real Estate Licensing Act to the dealings between the parties. I decline to join in this aberration.[1]

I note only a few of the misgivings I have concerning this holding. Whether or not the relationship of joint venture is created ordinarily depends upon the intention of the parties. *Luling Oil & Gas Co. v. Humble Oil & Refining Co.*, 144 Tex. 475, 191 S.W.2d 716, 722 (1945). Here, our parties expressly disclaimed any such intention to form the relationship.

The contract in this case did not authorize either party to create any liability to third parties which would have been binding on the other. "The [joint venture] relationship being in the nature of a partnership, losses must be shared as well as profits." *Brown v. Cole*, 155 Tex. 624, 291 S.W.2d 704, 709, 59 A.L.R.2d 1011 (1956).

This record shows, as recounted by the majority opinion: "[W]hen plaintiff [Micrea] submitted its expense summary, reflecting an excess of some $13,000 in expenses over receipts, this was not paid." As every businessman knows and realizes, when you have expenses in excess of receipts, you have a loss. But, Micrea, refusing to recognize a joint venturer status where losses as well as profits are to be shared, sued for all of its loss—$13,000. More importantly, this court has permitted its recovery of the entire sum against the defendant. Once again, the parties disavowed the joint venture concept by their actions.

Regardless of the perspective from which one views this case, it is clear that Micrea has recovered judgment representing compensation which it claims it would have earned from the sale of defendant's land; and, admittedly, Micrea was not licensed under the Act. In this dissent, I adopt with approval Justice Stephenson's language found in *Elrod v. Becker*, 537 S.W.2d 84, 86 (Tex.Civ.App.—Beaumont 1976, writ ref'd n. r. e.):

"Our courts require a strict compliance with the terms of the Real Estate Dealers License Act if a salesman is to use the courts for recovery for his services. *Hall v. Hard*, 160 Tex. 565, 335 S.W.2d 584 (1960)."

---

1. In his immortal work "Through the Looking-Glass," Lewis Carroll finds Alice puzzled with Humpty Dumpty's "unbirthdays." Being questioned by Alice, Humpty said: "When I use a word, it means just what I choose it to mean—neither more nor less." But, objected Alice: "The question is, whether you can make words mean so many different things." To which Humpty replied; "The question is, which is to be master—that's all." Do the words mean what the parties said or do they mean what the court has said? Or, more importantly, who is to be the master?

See also, *Tex-Co Grain Company v. Happy Wheat Growers, Inc.*, 542 S.W.2d 934, 936 (Tex.Civ.App.—Amarillo 1976, no writ), and authorities therein cited.

This case, as laid out in the majority opinion, turns on the concept of joint venture, a form of business entity which seems to have escaped mention in the Act itself. But, the new law announced in the opinion does violence to and is contrary to the theory behind the Act and its administration. See A. Amdur, "The Real Estate License Act—Synopsis, Elaboration, and Comments," 12 S.Tex.L.J. 269, 276, et seq. (1971).

Indeed, as I read the majority opinion, it likely is in conflict with the well-reasoned opinion in *Macphee v. Kinder*, 523 S.W.2d 509 (Tex.Civ.App.—San Antonio 1975, no writ).

The judgment of the trial court should be reversed and judgment here rendered denying plaintiff any recovery.