**TAYLOR COMMUNICATIONS, INC.,**
Appellant,

v.

**HARTE–HANKS NEWSPAPERS, INC.,**
et al., Appellees.

No. 4274.

Court of Civil Appeals of Texas.
Eastland.

Jan. 10, 1969.

Rehearing Denied Feb. 7, 1969.

Yates & Yates, Edmund C. Yates, Abilene, Prescott & Prescott, Dallas, for appellant.

McMahon, Smart, Sprain Wilson & Camp, Stanley Wilson, Abilene, for appellees.

WALTER, Justice.

Taylor Communications, Inc., filed suit against Corsicana Sun, Inc., Caller-Times Publishing Company, Houston Harte, Sr., Bruce Meador and others for a purchasing agent's commission which it alleged it was entitled to as a result of its efforts and negotiations in the purchase of the Corsicana Daily Sun and the Morning Light by the defendants. The defendants' motion for a summary judgment was granted and the plaintiff has appealed.

Appellant contends Harte and Meador employed it to purchase the newspaper properties and its employment was for the purpose of purchasing personal property only without the real estate. A correct statement concerning the pleadings is copied from appellant's brief and is as follows:

"By first amended original petition, Appellant sued Appellees Harte and Meador as agents for undisclosed principals for a commission for its services in being the procuring cause of the purchase of the two Corsicana newspapers from Fred DuBose and associates. In the alternative, the other Appellees were sued as the principals in the transaction. An express employment to buy the assets was alleged, expressly excluding a small amount of real estate, that Appellees, it

was alleged, said they did not want to buy, but which was finally included in the sale. Appellant alleged an agreed commission for a specific amount and in the alternative prayed for a reasonable amount. As an alternative to the claim under an express contract Appellant alleged that Appellees accepted its services knowing that it expected a commission and were therefore bound to pay the commission. Appellees filed general denials."

Appellees pleaded in their motion for summary judgment that this suit was an attempt to collect a commission on an indivisible sale involving real estate and that the plaintiff had neither a real estate license nor a written listing of the properties and pleaded Article 6573a V.A.C.S. as a bar to plaintiff's claim.

The oral deposition of Bruce Meador, Houston Harte, Fred DuBose and the affidavit and oral deposition of O. L. Taylor, president of the plaintiff corporation, was considered in passing on the appellees' motion for summary judgment.

We agree with appellant that in passing on this summary judgment, we are to disregard everything favorable to appellees and examine the record for evidence and inferences therefrom which will support a recovery for appellant.

Section 19 and subdivision (1) and (k) of Section 4 of Article 6573a are as follows:

"License prerequisite to suit for compensation

Sec. 19. No person or company may bring or maintain any action for the collection of compensation for the performance in this State of any of the acts set out in subdivision (1) of Section 4 hereof without alleging and proving that the person or company performing the brokerage services was a duly licensed real estate broker or salesman at the time the alleged services were commenced; or was a duly licensed attorney-at-law as exempt

from the provisions of this Act by Section 6."

"Sec. 4. The following terms shall, unless the context otherwise indicates, have the following meaning:

(1) The term 'Real Estate Broker' shall mean and include any person who, for another or others and for compensation or with the intention or in the expectation or upon the promise of receiving or collecting compensation;

(k) Procures or assists in the procuring of properties calculated to result in the sale, exchange, leasing or rental of any business enterprise, or sells, exchanges, purchases, rents, or leases any business enterprise;"

Section 28 of Article 6573a is in part as follows:

"No action shall be brought in any court in this State for the recovery of any commission for the sale or purchase of real estate unless the promise or agreement upon which action shall be brought, or some memorandum thereof, shall be in writing and signed by the party to be charged therewith or by some person by him thereunder lawfully authorized."

In his oral deposition O. L. (Ted) Taylor testified substantially as follows: I am the president and managing officer of Taylor Communications, Inc. We are in the brokerage business of buying and selling radio and television stations and newspaper businesses. I am not a licensed real estate broker, neither is the corporation Taylor Communications, nor any of its employees.

The first time I was told that they would not pay a commission was in Brownsville, Texas, and it was told to me in what I considered to be jest by Mr. Harte. Mr. Meador told me in a telephone conversation between my room and his on Sunday night in Brownsville that Mr. Harte thought that I should get my commission from the seller. There wasn't any jest about that statement. Mr. Harte told me two and maybe three

times one evening that he would not pay a commission. I consider Mr. Meador and Mr. Harte to be reputable people and they are well regarded and recognized in the newspaper industry.

Mr. Taylor was asked the following questions and he gave the following answers: "Q. Well, let me ask you if it is not the climate in which you continued to work that you gambled on the fact that you would be able to do the kind of a job which would collect you a commission from either the seller or the purchaser in some way that you could put this deal together? A. I knew that if I could get it down to a reasonable figure, and Mr. Meador and Mr. Harte didn't want it, then, I knew where there were people who would buy it. Q. So, you figured maybe if they wouldn't take it, as a result of these efforts that you were going to, you had a place that maybe you could put it? A. Sure. Q. And get a commission for it? A. Sure. Q. And that is the manner, and the premise upon which you rendered your efforts in this trade, and in this negotiation; is that correct? A. That is normal."

Mr. DuBose, who did most of the negotiating for the sellers, was contacted by me and asked if he would sell the other assets without the building and he informed me that he would not, and I related this fact to Mr. Meador. Over fifty percent of the transactions handled by us are transactions in which the purchaser pays our commission.

Early in 1967 I talked to Bruce Meador at his office in Abilene. He asked me if I had represented Mr. Woodson in trying to purchase the Corsicana Sun and I informed him that I had but was not now obligated to him. Mr. Meador then asked me if I would be in a position to represent them and I told him that I would. He told me they had been interested in that paper for a long time and asked me to go down there and see what could be done about buying it. I made a trip to Corsicana and found out from Mr. DuBose that the paper was not

for sale but could be purchased for $1,500,-000.00 and that he would pay no commission. At Mr. Meador's request I arranged a meeting between DuBose, Meador, Harte and Shelton at Corsicana. I met them at the airport and drove them over a part of the town and then to the newspaper plant. I delivered to Meador a projection of a purchase plan which showed a brokerage fee to me for $37,500.00 and a consulting fee to me of $7,500.00 per year for five years.

The record conclusively shows that there was no written agreement between the appellant and any of the appellees to pay a commission. The record conclusively shows that the Sun-Light Publishing Company, a partnership composed of Fred A. DuBose and others, was a business enterprise which published a daily and a semi weekly newspaper in Corsicana.

After many conferences, the sale was consummated for the total price of One Million Three Hundred Sixty Thousand Dollars. No one notified Taylor of the closing meeting and he was not present.

We agree with appellant's points that the depositions and the affidavit of Taylor raise issues of fact to the effect that Harte and Meador employed Taylor to purchase the newspaper properties and that they accepted the benefits of his services knowing that he expected a commission.

However, these issues of fact are immaterial because of Article 6573a, V.A.C.S. Taylor was not a licensed real estate broker, he had no written contract to purchase the business enterprise and the purchase of the newspaper was in part personal property and in part real estate and the contract, being an entire and indivisible contract, it follows that in order to recover a commission, there must have been a written contract as provided for in Article 6573a. Stroble v. Tearl, 148 Tex. 146, 221 S.W.2d 556 (1949).

We have considered all of appellant's points and find no merit in them. They are overruled. The judgment is affirmed.