**TAYLOR COMMUNICATIONS, INC.,**
**Petitioner,**

v.

**HARTE–HANKS NEWSPAPERS, INC.,**
**et al., Respondents.**

No. B–1424.

Supreme Court of Texas.

Nov. 12, 1969.

Rehearing Denied Dec. 17, 1969.

Prescott & Prescott, Dallas, Yates & Yates, Edmund C. Yates, Abilene, for petitioner.

McMahon, Smart, Sprain, Wilson & Camp, Bob J. Surovik, Stanley P. Wilson and T. J. McMahon, Abilene, for respondent.

STEAKLEY, Justice.

Petitioner, Taylor Communications, Inc., sued Respondents for a purchasing agent's commission allegedly arising out of the purchase by Respondents of the newspaper properties of the Sun-Light Publishing Company, a partnership enterprise which published the Corsicana [Texas] Daily Sun and Morning Light. The total purchase price was $1,360,000, of which the sum of $65,000 was shown to have been paid for the real estate properties. Petitioner was not a licensed real estate broker. Respondents' motion for summary judgment was granted by the trial court upon consideration of the pleadings, the deposition testimony of O. L. Taylor, the president of Petitioner; Bruce B. Meador and Houston Harte, Sr., the principal actors for Respondents; Fred DuBose, one of the sellers; and the affidavit of Taylor in opposition to the motion. The Court of Civil Appeals affirmed the judgment of the trial court. 436 S.W.2d 565.

We were of the tentative view in granting Petitioner's application for writ of error that while the purchase by Respondents of the newspaper enterprise included its real estate properties, there was an issue of fact upon the question of whether Petitioner was engaged to procure the newspapers without the real estate. It was thought that if such were the nature of the employment, Petitioner would be entitled to maintain its suit under the rationale of Hall v. Hard, 160 Tex. 565, 335 S.W.2d 584 (1960), notwithstanding Section 4(1)(k) of Article 6573a, Vernon's Annotated Texas Civil Statutes, and contrary to the holding of the Court of Civil Appeals. We have concluded, however, that the judgments below were correct, but for reasons other than those considered determinative by the Court of Civil Appeals. In our view the summary judgment record conclusively establishes that there was no contract between Petitioner and Respondents for the payment of a commission. This is shown by the deposition testimony of Taylor, the managing executive of Petitioner, as well

as that of Harte and Meador for the Respondents. Taylor testified that Harte and Meador were the people with whom he negotiated, and that he was told by them during the preliminary stages of the negotiations that they would not pay him a commission. He stated that the following was the only commitment that he had with reference to a commission:

"On Sunday night in Brownsville, I think the dates are established, in a telephone conversation between myself and Mr. Bruce Meador, I reported to him on a conversation that I had had all afternoon Sunday with Mr. Fred DuBose. And I hold him that I thought if he would give me a firm offer of $1,440,000.00 to go into a breakfast meeting the next morning with Mr. DuBose, at eight o'clock, that I could tie him down, and explain that if I asked a question, if I asked DuBose a hypothetical question, 'Would you take so much,' his answer would probably be no. But, if I could be armed with a firm offer of $1,440,000.00, that I could tie him down the next morning at breakfast. Mr. Meador said, 'Hold on, I will talk to Mr. Harte.' He came back on the telephone and he said, 'Mr. Harte said that if that would include your commission, go ahead.' " [1]

It was clearly shown by the testimony of Taylor that he was endeavoring to bring the parties into agreement in the hope and expectation that a commission would be forthcoming from either the sellers or purchasers; or, if not, that he knew of other parties who would purchase the newspapers for a reasonable figure in which case he would receive a commission.[2]

1. Q. "Now, is this all that Mr. Meador ever told you in the way of agreeing to pay your commission, or that they would pay your commission?
A. "This is the only commitment that I have on including the commission.
Q. "All right. The only thing that anybody connected with any Harte-Hanks interests ever told you from which you drew the conclusion that they would pay your commission?
A. "That is correct."
A still later interrogation was as follows:
"Now, you told us about a telephone conversation with Mr. Meador in Brownsville on Sunday night.
"THE WITNESS: A. Right.
Q. "Which you said, as I understood your testimony, you interpretted (sic) to mean that if you could get the price down to $1,440,000.00 and that if you could get your commission out of that, that they would buy it?
A. "That's right.
Q. "Now, how much would that have netted Mr. DuBose and his associates?
A. "$1,377,241.00.
Q. "And Mr. DuBose wouldn't take that, would he?
A. "No, sir.
Q. "If he had taken it, Mr. DuBose would have been paying your commission, wouldn't he?
A. "Yes, sir."

2. Q. "It is a fact, then, is it not, Mr. Taylor, that you had faith enough in your ability and in the availability of matters with which you had to work that someway (sic) you would be able to swing a deal where you could get enough to make up a commission for you; you would either get the seller to take the right sum of money, or you would be able to get the purchaser to pay the right sum of money where there would be a commission for you?
A. "Yes, sir.
Q. "Isn't that sort of the way that it was?
A. "Yes, sir."
* * * * * *
Q. "Well, let me ask you if it is not the climate in which you continued to work that you gambled on the fact that you would be able to do the kind of a job which would collect you a commission from either the seller or the purchaser in some way that you could put this deal together?
A. "I knew that if I could get it down to a reasonable figure, and Mr. Meador and Mr. Harte didn't want it, then, I knew where there were people who would buy it."
* * * * * *
Q. "I see. And you found yourself in something of a dilemma, I guess, Mr. Taylor, all the way through this thing, and both sides telling you that they would not pay your commission, and yet here you were trying to put the deal together; and you were doing it on

Respondents' motion for summary judgment asserted the nonexistence of any agreement of Respondents to employ Petitioner to purchase or negotiate for the purchase of the properties in question, or to pay compensation. Taylor filed an affidavit in opposition to Respondents' motion, but did not undertake to repudiate his deposition testimony in the controlling respects reviewed above.

The judgments below are affirmed.

faith in the fact that you felt that you would be successful in working something out? Is that pretty much the position that you were in?

Q. "And you operated on that premise in rendering your services, then?

A. "On the premise of complete confidence in both Mr. DuBose and Mr. Meador.

Q. "All right.

A. "And Mr. Harte.

Q. "That somebody would pay you; is that correct?

A. "(No audible answer)

Q. "That you would be able to work the deal out to where you would get a commission?

A. "Right."